Jane SMITH, et al., Respondents,

v.

BRUTGER COMPANIES & Brutger Management Company, subsidiaries of Brutger Equities, Inc., et al., Appellants,

Hegg Capital Company, Inc., Appellant.

No. C2–96–600.

Supreme Court of Minnesota.

Oct. 23, 1997.

Thomas H. Crouch, Kenneth W. Dodge, Meagher & Geer, P.L.L.P., Minneapolis, for appellants Brutger Companies, Brutger Management Co. and Management Dynamics Co.

Lawrence J. Hayes, Jr., Eagan, for appellant Hegg Capital Co., Inc.

Joepsh M. Crosby, Crosby & Grimshaw, Minneapolis, for respondent Smith.

## OPINION

ANDERSON, Justice.

The Minnesota Court of Appeals reversed grant of summary judgment in favor of appellants Brutger Companies, Brutger Management Company, and Management Dynamics Company (Brutger) and Hegg Capital Company, Inc. (Hegg) and remanded for trial a negligent misrepresentation claim brought by respondents Jane Smith and her husband Joe Smith (Smiths). The court of appeals concluded that summary judgment was procedurally invalid and that the district court applied an incorrect legal standard when it entered judgment for Brutger and Hegg. We reverse.

In the early morning hours of August 11, 1988, respondent Jane Smith was sexually assaulted by an intruder who entered her ground-level apartment at Woodridge Apartments (Woodridge) in Eagan, Minnesota. The evening before the assault was a warm summer evening, and Jane Smith left the dining room window open and unlocked to improve ventilation. The intruder cut the screen and entered the apartment through this window.

During the summer of 1994, the Smiths sued Brutger and Hegg, the companies that own and manage Woodridge, for damages. The Smiths brought four claims against Brutger and Hegg. The first claim was based on Brutger and Hegg's alleged negligent failure to provide information to the Smiths about security devices designed to prevent forced entry into their apartment and to warn the Smiths about criminal activities in and around Woodridge before the assault. The second claim alleged that Brutger and Hegg negligently failed to provide proper lighting for the Woodridge grounds and apartments. The third claim asserted that Brutger and Hegg negligently failed to provide adequate security devices on the Woodridge grounds and in the apartments. The fourth claim alleged negligent misrepresentation by Brutger and Hegg and damages to the Smiths as a result of the misrepresentation.

The Smiths' misrepresentation claim is based upon the following facts. In May 1988, Joe Smith met with Kimberly Gorman, a Woodridge representative, to inquire about leasing an apartment. Smith asserts that when he met with Gorman, he told her that his family's safety was a crucial factor in his choice of an apartment because he often traveled out of town on business. Smith stated in his deposition that, as part of her sales pitch, Gorman told him about the various security features of Woodridge, which features included security key access to the building and the garage and a security intercom system at the front entrance.[1] According to Smith, Gorman told him that Woodridge was a "luxury apartment complex," and she also "represented [Woodridge] as a very safe environment with several security systems and one that was full of good people and that this would be a very good place for us to be with our child." Smith claimed that he relied on this information in selecting Woodridge. He also stated that he and his wife "left the windows open, if we did, to get fresh air, and we believed, based on what I was told at the time that I rented this apartment, that it would be very safe to do so."[2] Joe Smith conceded, however, that Gorman did not describe to him any specific feature

---

1. Joe Smith and Jane Smith answered an interrogatory as to the factual basis supporting their misrepresentation claim as follows:

 INTERROGATORY 12: Set forth with specificity each and every factual basis supporting the plaintiffs' claim, contained in paragraph 28 of Plaintiffs' Complaint, that defendant represented to the plaintiffs that Woodridge was a security apartment complex.

 ANSWER: Plaintiff Joe Smith was told that Woodridge was safety and security conscious. He was told the underground garage entrance was accessible only to residents by use of a card inserted into a garage door device to gain entry. He was told all entrances were locked and entry could only be done by a key or consent by a resident. The pool, community rooms and exercise rooms were for Woodridge residents only. Woodridge represented they had well lighted common grounds that were safe and secure.

2. At his deposition, Joe Smith gave the following answers to questions with respect to locking the windows to the apartment:

 Q. We were talking about the latching system on the windows at your apartment and I understood you to be saying that you did not view those as a security device before the date of [Jane's] attack; is that correct?

 A. Yes.

 Q. So am I understanding that you would not make a point then to shut those latches because you did not view it as a safety protector?

 MR. CROSBY: If you can answer the question, go ahead.

 A. We left the windows open, if we did, to get fresh air, and we believed, based on what I was told at the time that I rented this apartment, that it would be very safe to do so.

 BY MR. DODGE:

 Q. What were you told that suggested to you that it would be safe not to latch the windows?

 A. Kim represented Woodridge to me as a luxury apartment complex. I realized I was paying more. She represented to me the security features of the buildings and that it was a safe environment in and around the buildings, and because of all that, I relied on all of that and I viewed it as being safe, based on that, to allow a window to be open to get fresh air.

or system of Woodridge that did not exist. He also acknowledged that he did not have any discussion with Gorman about crime in the area. The Smiths' lease, which Jane Smith stated she read, provided that the management would not be responsible for the actions, damages, or injuries caused by intruders or other third parties.

In November 1995, Brutger and Hegg each brought a separate motion for summary judgment on the ground that they did not have a duty to protect the Smiths from the criminal acts of a third party. In Hegg's memorandum in support of the summary judgment motion, it framed the issues as follows:

> Plaintiffs' claims against Defendants are based in negligence. Plaintiff alleges (1) failure to warn, (2) failure to provide adequate lighting, (3) failure to provide adequate security measures and (4) misrepresentation. * * * To prove any of these claims, Plaintiff must first prove that Defendants had a duty to protect her from assault by a third party.

The parties' memoranda addressed the legal issue of whether Brutger and Hegg had a duty to protect the Smiths. The parties did not address whether Brutger and Hegg had a duty to exercise reasonable care in conveying information to the Smiths regarding the safety of Woodridge and, if such a duty existed, whether Brutger and Hegg had breached the duty.

In opposition to the summary judgment motions, the Smiths submitted evidence that Brutger and Hegg had encouraged the Smiths and other Woodridge residents to rely on Woodridge as a security complex located in a safe neighborhood. The Smiths presented numerous police reports of burglaries, break-ins, and other crimes that had occurred at Woodridge during the more than two and one-half years from the date Woodridge opened to the date of the sexual assault on Jane Smith. The Smiths also offered evidence that Brutger and Hegg contacted the Eagan Police Department two months before the sexual assault on Jane Smith because they were concerned about the level of crime at Woodridge. The Smiths, however, did not submit any police reports documenting any acts of physical violence against Woodridge residents that had occurred before the sexual assault on Jane Smith.

The summary judgment motions were heard on December 20, 1995, and on the following day, the district court granted partial summary judgment. The court concluded that there was no "special relationship" between the Smiths and Brutger and Hegg and that Brutger and Hegg had no duty to protect the Smiths from the criminal acts of third parties. The court's judgment did not address whether Brutger and Hegg had a duty to use reasonable care in conveying information to the Smiths about safety at Woodridge.

The Smiths' attorney subsequently contacted the district court to clarify whether summary judgment had been granted on all of the Smiths' claims or, alternatively, the misrepresentation claim was still pending. In response, on December 26, 1995, the court scheduled a conference call for January 2, 1996, to discuss the trial set for January 1996 and the "misrepresentation issue from the original complaint that has not been dismissed." The court also sent the parties a letter scheduling the conference call and stating that they would discuss the misrepresentation claim during the conference call.

The conference call was held as scheduled. During the call, the parties gave their arguments and Brutger and Hegg again argued that the court should dismiss the Smiths' misrepresentation claim. Without requiring the parties to submit additional motion papers, the court issued an order on January 3, 1996, dismissing the Smiths' misrepresentation claim and ordering the immediate entry of judgment. The court determined that the misrepresentation claim was a claim in negligence, that a claim in negligence must be based on a duty, and that "since there were no 'special circumstances', there could be no duty as a matter of law." The court concluded the previous order granting Brutger's and Hegg's motions for summary judgment specifically included the Smiths' "misrepresentation claim based upon negligence that are [sic] set forth in Plaintiffs' complaint" and therefore dismissed the "entire matter."

The court of appeals affirmed the district court's grant of summary judgment on the first three counts of the complaint, holding that Brutger and Hegg had no duty to warn the Smiths of criminal activity at Woodridge nor to protect the Smiths against the criminal acts of third parties. However, the court of appeals reversed summary judgment on the misrepresentation claim and remanded the issue for trial. The court of appeals held that Brutger and Hegg violated the notice requirements of Minn. Gen. R. Pract. 115 and Minn. R. Civ. P. 56.03 by failing to serve a motion for summary judgment on the misrepresentation claim at least ten days before the January 2 hearing on the motion. In addition, the court of appeals held that the Smiths were prejudiced due to the lack of notice because neither party addressed the misrepresentation claim in the original summary judgment motions and memoranda. Finally, the court of appeals held that the district court did not apply the proper duty of care in dismissing the misrepresentation claim. The court of appeals determined that the duty of care owed in the context of negligent misrepresentation was defined in *Florenzano v. Olson*, 387 N.W.2d 168, 174 (Minn.1986), as "an objective standard of reasonable care or competence" applicable "when supplying information, either for the guidance of others in the course of a transaction in which one has a pecuniary interest, or in the course of one's business, profession or employment."

On appeal to this court, Brutger and Hegg argue that their motions for summary judgment were procedurally valid because the original summary judgment motions placed the misrepresentation claim before the district court and gave the Smiths proper notice. They assert that discovery had been completed, the case was less than a month from trial, and all of the dispositive facts relating to the Smiths' misrepresentation claim were part of the record.

As to the merits of the Smiths' misrepresentation claim, Brutger and Hegg argue that the misrepresentation claim must fail because they did not owe the Smiths any duty of care. In addition, Brutger and Hegg assert that the claim must fail because Gor-

man did not convey any false statement or information to the Smiths. Finally, Brutger and Hegg assert that the Smiths cannot as a matter of law establish that they reasonably relied upon Gorman's statements because the statements were not false, were vague and mere opinion or conjecture about future events, and because the lease stated explicitly that the landlord would not be liable for injury caused by intruders.

## I.

■ We first address the issue of whether the court of appeals erred in concluding that summary judgment on the Smiths' misrepresentation claim was procedurally improper. Under Minn. Gen. R. Pract. 115.03, no motion shall be heard unless motion papers are served at least 28 days prior to the hearing. Minn. R. Civ. P. 56.03 requires that a motion for summary judgment must be served at least ten days before the hearing. Notice requirements for motions under Minn. R. Civ. P. 56.03 are mandatory, absent a clear waiver by the adversary. *McAllister v. I.S.D. No. 306 of Hubbard County,* 276 Minn. 549, 550, 149 N.W.2d 81, 82 (1967).

■ We conclude that Brutger's and Hegg's original motions for summary judgment included the negligent misrepresentation claim and therefore the notice requirements of Minn. Gen. R. Pract. 115.03 and Minn. R. Civ. P. 56.03 were satisfied. The original motions were made within two months of trial and heard a month before trial. The motions included a request that the court grant summary judgment dismissing the Smiths' complaint with prejudice and made clear that Brutger and Hegg were seeking to have the entire lawsuit dismissed. In addition, the motions were heard after full discovery had been completed and were decided on undisputed facts.

Following its December 21 grant of partial summary judgment, the court received an inquiry from the Smiths' counsel regarding the "issue of misrepresentation that was in the [Smiths'] original complaint." The court responded to the inquiry by issuing an order and sending a letter which set a conference call between the judge and the parties for one week later for the explicit purpose of

discussing the January 1996 trial date and "the misrepresentation issue from the original complaint that has not been dismissed." Following further argument on the motion during the conference call, the court determined that the misrepresentation claim should be included in its original judgment.

In their memoranda on the summary judgment motions, it is apparent that the parties based their legal arguments on the erroneous assumption that whether Brutger and Hegg had a duty to protect the Smiths was dispositive of the misrepresentation claim. Nonetheless, the parties' erroneous legal arguments did not diminish the Smiths' notice that the misrepresentation claim was before the district court. The court's failure to include the misrepresentation claim in its December 21 grant of summary judgment did not require the submission of new motion papers. It is clear from the record that the Smiths had adequate notice and opportunity to prepare for the hearing on their misrepresentation claim. We hold that the court of appeals erred in concluding that summary judgment on the misrepresentation claim was procedurally improper under Minn. Gen. R. Pract. 115.03 and Minn. R. Civ. P. 56.03.

## II.

Having concluded that the notice requirements of Minn. Gen. R. Pract. 115.03 and Minn. R. Civ. P. 56.03 were satisfied, we next address whether the district court properly granted summary judgment in favor of Brutger and Hegg on the misrepresentation claim. Summary judgment is proper when the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits, if any, submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Minn. R. Civ. P. 56.03. On appeal from an order of summary judgment, the reviewing court must review the record for the purpose of answering two questions: (1) whether there are any genuine issues of

material fact to be determined; and (2) whether the district court erred in its application of the law. *Offerdahl v. Univ. of Minn. Hosps. & Clinics,* 426 N.W.2d 425, 427 (Minn.1988). On review, this court views the evidence in the light most favorable to the party against whom summary judgment was granted. *Id.*

■ This case presents us with a claim of negligent misrepresentation involving the risk of physical harm, a tort that we have neither specifically adopted nor rejected in Minnesota. The Restatement (Second) of Torts § 311 (1965) defines negligent misrepresentation involving risk of physical harm as follows:

(1) One who negligently gives false information to another is subject to liability for physical harm caused by action taken by the other in reasonable reliance upon such information, where such harm results

(a) to the other, or

(b) to such third persons as the actor should expect to be put in peril by the action taken.

(2) Such negligence may consist of failure to exercise reasonable care

(a) in ascertaining the accuracy of the information, or

(b) in the manner in which it is communicated.

The elements of this tort are: (1) a duty of reasonable care in conveying information; (2) breach of that duty by negligently giving false information; (3) reasonable reliance on the misrepresentations, which reliance is the proximate cause of physical injury; and (4) damages.

The tort of negligent misrepresentation involving the risk of physical harm differs from the companion tort of negligent misrepresentation involving damages for pecuniary loss as defined in Restatement (Second) of Torts § 552 (1977).[3] This court adopted negligent misrepresentation involving pecuniary loss as

---

**3.** The Restatement (Second) of Torts § 552 provides:

One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in

their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

defined in Restatement (Second) of Torts § 552 in *Bonhiver v. Graff*, 311 Minn. 111, 121–22, 248 N.W.2d 291, 298–99 (1976) and reaffirmed the use of this definition in *Florenzano*, 387 N.W.2d at 174 n. 3.[4] The court of appeals relied on *Florenzano* when it made its decision in this case. Unlike the situation before us, negligent misrepresentation involving damages for pecuniary loss applies primarily to business situations in which false information is supplied to guide others in business transactions and a pecuniary loss is suffered. *See, e.g., id.* at 175 (holding that negligent misrepresentation was basis for liability of insurance agent who supplied client with false information leading to client's loss of social security benefits). The Smiths did not plead negligent misrepresentation resulting in pecuniary loss; thus, *Bonhiver* and *Florenzano* do not dictate the outcome of this case.

 While we do not foreclose the possibility of recognizing in Minnesota the tort of negligent misrepresentation involving the risk of physical harm, we decline to do so today. This case is not the appropriate vehicle to do so. Even if we were to recognize the tort of negligent misrepresentation and even if there was some material misrepresentation by Brutger and Hegg, the facts foreclose the possibility of the Smiths proving that any misrepresentation had any causal connection to the assault on Jane Smith. The undisputed material facts of this case do not give rise to an actionable claim for negligent misrepresentation because the Smiths did not reasonably rely on Gorman's statements. The intruder gained access to the Smiths' apartment by cutting a screen on the unlocked dining room window. It is undisputed that the window had a locking mechanism. Before going to bed, Jane Smith locked the sliding glass doors and the front door. She stated that she locked the doors for security purposes. She also stated that she may have given consideration to locking the window before going to bed, but did not, even though when she left the apartment, she would lock the window for security purposes.

Joe Smith admitted that the safety features of Woodridge Gorman described to him did in fact exist. Gorman's statements that Woodridge was a "luxury apartment complex" and a "very safe environment" in which to live were generalized opinions, and therefore are not actionable misrepresentations as a matter of law. *See, e.g., M.B. v. City of San Diego*, 233 Cal.App.3d 699, 708, 284 Cal. Rptr. 555 (1991) (holding that police officers' generalized reassurances "not to worry" about person who burglarized plaintiff's residence and made obscene phone calls to plaintiff and generic advice as to precautionary measures were not actionable on negligent misrepresentation theory when burglar subsequently raped plaintiff); *also see generally* W. Page Keeton, et al., *Prosser and Keeton on the Law of Torts* § 109 at 755–765 (5 ed.1984) (discussing the relation between opinion statements and justifiable reliance). Finally, Gorman had no special knowledge of

---

4. In *M.H. v. Caritas Family Servs.*, we also cited *Bonhiver* when we dealt with the issue of alleged negligent misrepresentations made by an adoption agency. 488 N.W.2d 282, 287 (Minn.1992). In *Caritas*, the defendant adoption agency argued that holding them liable for negligent misrepresentations would be against public policy. *Id.* at 286. We answered only the narrow question of whether public policy precludes "a negligent misrepresentation action against an adoption agency where the agency, having undertaken to disclose information about the child's genetic parents and medical background to the adoptive parents, negligently withholds information in such a way that the adoptive parents were misled as to the truth." *Id.* at 288. In answering this question, we decided solely that a negligent misrepresentation claim against an adoption agency was not barred under the specific facts of that case. *Id.* We did not, however, specifically adopt the tort of negligent misrepresentation in all contexts.

We clearly did not adopt the specific tort of negligent misrepresentation resulting in physical harm. The plaintiffs in *Caritas* did not specifically allege physical harm in their complaint. *Id.* at 290. They did, however, allege that they had "suffered grevious [sic] mental pain and anguish." Plaintiff's Complaint at 3, Appellant's Brief at Appendix 4, *M.H. v. Caritas Family Servs.*, 475 N.W.2d 94 (Minn.App.1991) (Nos.CX-91-406, C9-91-672), *rev'd in part and aff'd. in part*, 170 Wis.2d 155, 488 N.W.2d 282 (Minn. 1992). Because the question before us was so narrow, we did not address the broader issue of alleged harm. We did not answer the broader question of whether negligent misrepresentation resulting in physical harm was a viable tort in Minnesota.

crime in the neighborhood surrounding Woodridge that was not readily available to the Smiths when they chose to live there. *Cf. Kociemba v. G.D. Searle & Co.,* 707 F.Supp. 1517, 1525 (D.Minn.1989) (stating that intentional representations made by a party with special knowledge and relied upon by the injured party may be considered to be facts rather than opinions). We conclude that summary judgment in favor of Brutger and Hegg was properly granted; therefore, we reverse.

Reversed.

TOMLJANOVICH, Justice (dissenting).

I vigorously dissent.

Although the majority correctly states the standard upon which we must base our review of a trial court's dismissal of a case via summary judgment, the majority fails to follow its own directive. It is a basic tenet of appellate review that we will uphold a summary judgment only if there is no genuine issue of material fact and only if either party is entitled to a judgment as a matter of law. *Fabio v. Bellomo,* 504 N.W.2d 758, 761 (Minn.1993). It also is a basic tenet of appellate review that a court can determine the existence of any issues of material fact only after the court first determines the proper rule of law to apply to the facts. Logic dictates that facts material to one rule of law might be completely irrelevant to another rule of law. This case is just such an example. Were we to hold that a landlord has no duty to exercise reasonable care to assure that his or her representations are factually accurate, the actual accuracy of the representations would become irrelevant, as would the potential tenant's reliance upon those representations. But were we to hold that a landlord has a duty to exercise reasonable care to assure that his or her representations are factually accurate, then the actual veracity of the representations would be material, as would the potential tenant's reliance upon those representations.

I am confused by the majority's position. On the one hand, the majority refuses to state that it is imposing on landlords the duty of care enunciated in § 311 of the Restatement (Second) of Torts (1965), but on the other hand, it contends that there are no genuine issues of material fact in regard to any of the elements required by the § 311 standard.

If the majority does not want to impose such a duty on landlords, it should say so. Although we have recognized the tort of negligent misrepresentation in many other contexts, *see Bonhiver v. Graff,* 311 Minn. 111, 121–23, 248 N.W.2d 291, 298–99 (1976); *Florenzano v. Olson,* 387 N.W.2d 168, 176 (Minn.1986); *M.H. v. Caritas Family Servs.,* 488 N.W.2d 282, 288 (Minn.1992), we have yet to recognize such a tort in the context of a landlord-tenant relationship. As such it is our duty as the highest court in this state to determine whether our law will recognize such a claim in this context. Tort liability in the first instance always depends on whether the party accused of the tort owes a duty to the accusing party. *L & H Airco., Inc. v. Rapistan Corp.,* 446 N.W.2d 372, 378 n. 3 (Minn.1989). No duty is owed unless the plaintiff's interests are entitled to legal protection against the defendant's conduct. *Id.* at 378. Whether the plaintiff's interests are entitled to legal protection against the defendant's conduct is a matter of public policy. *Id.* Consequently, our decision to recognize such a duty is a pure question of law.

The question before this court, therefore, is not whether the landlord in this case made a negligent misrepresentation to the plaintiff, but whether it is legally possible for a landlord to make a negligent misrepresentation to the plaintiff. The trial court has erred in concluding that our prior cases foreclosing a landlord's duty to protect tenants from the intentional acts of third parties somehow foreclosed a landlord's duty to exercise reasonable care in assuring that his or her representations are accurate. In addition, we have concluded that the court of appeals erred by holding that the duty of care enunciated in § 552 of the Restatement (Second) of Torts (1977), and adopted by us in *Florenzano,* 387 N.W.2d at 174 n. 3, reaches to those cases that result in physical injury. We are left with two questions: Whether to extend the already existing tort of negligent misrepresentation to the landlord-tenant context, and if so, the extent of that duty.

It is my contention that it would be good public policy to extend the tort of negligent misrepresentation to the landlord-tenant context, and that the extent of that duty follow that enunciated in § 311.[5] One commentator has described negligent misrepresentation as follows:

> If the defendant consciously misstates the facts in such a way as to lead the plaintiff to place himself or his property in danger of harm, which the defendant still does not intend, the defendant may nevertheless not be exercising proper care for the plaintiff's safety, and so be liable for his negligent use of language. But even where the defendant is not consciously misstating the facts, he may still be liable for negligence in speaking where he has not exercised proper care to ascertain the truth, or to communicate it.

W. Page Keeton et al., *Prosser and Keeton on The Law of Torts* § 33, at 205 (5th ed.1984) (hereinafter Prosser). Unlike the claims for failure to warn or failure to protect, this tort does not require the defendant to protect the plaintiff from the acts of a third party, rather it requires the defendant to take objectively reasonable steps to assure that the information the defendant is providing to the plaintiff is accurate. A court's determination of the duty to take objectively reasonable steps to provide accurate information is different than the determination of the duties to protect or warn. *See Garcia v. Superior Court*, 50 Cal.3d 728, 268 Cal.Rptr. 779, 782–83, 789 P.2d 960, 963–64 (1990) (finding duty for negligent misrepresentation claim despite lack of duty to protect). Whereas those duties are based upon a special relationship, the duty to take objectively reasonable steps to provide accurate information is based upon the foreseeability of the recipient's reliance upon the information.

In all cases of negligent misrepresentation * * * the circumstances must be such that

the defendant is under a duty to the plaintiff to exercise reasonable care *in giving the information,* and that the reliance upon what he says, with resulting danger, is reasonably to be expected.

Prosser, *supra,* at 207 (emphasis added). In concluding that a police officer who had no duty to protect or warn the plaintiff still had a duty to take objectively reasonable steps to provide the plaintiff with accurate information, the California Supreme Court stated "the court's search for a special relationship was unnecessary [in finding a duty under a claim for negligent misrepresentation]." *Garcia,* 268 Cal.Rptr. at 782, 789 P.2d at 963. The court went on to state that:

> A special relationship is a prerequisite for liability based on a defendant's *failure to act.* * * * In contrast, plaintiffs in this case assert that [defendant] is liable because his allegedly negligent representations about Morales's physical safety induced her to be less careful. Accordingly, it is unnecessary to look beyond the ordinary rules that determine when misrepresentations are actionable.

*Id.* (Citations and footnote omitted). The question before this court, therefore, is not whether Woodridge's lack of duty to protect or warn the Smiths from the criminal activities of a third party precludes their claim for negligent misrepresentation, but whether Woodridge had an independent duty to take objectively reasonable steps to provide the Smiths with accurate information concerning the safety of the apartment complex.

Were the majority to disagree with this contention and merely conclude that it would be bad public policy to extend negligent misrepresentation to this context, my dissent would be complete. But instead of deciding the issue squarely before it, the majority avoids its obligation by finding facts and then determining that the plaintiff could not possibly prove a negligent misrepresentation

---

5. Restatement (Second) of Torts § 311 (1965) states as follows:

(1) One who negligently gives false information to another is subject to liability for physical harm caused by action taken by the other in reasonable reliance upon such information, where such harm results
 (a) to the other, or

(b) to such third persons as the actor should expect to be put in peril by the action taken.
(2) Such negligence may consist of failure to exercise reasonable care
 (a) in ascertaining the accuracy of the information, or
 (b) in the manner in which it is communicated.

claim. Such a determination is terribly premature. This case comes before us on a review of a trial court's dismissal of a case via a summary judgment motion. Not only that, it comes before us on a review of a trial court's dismissal of a case via a summary judgment motion that failed to address the specific issue we now are considering. A quick review of the rather scant record shows that the defendant in this case based its summary judgment motion on the ground that a landlord had no duty to protect its tenants from the criminal acts of a third party. At no time did the defendant address the issue of whether it had a duty to exercise reasonable care in assuring that its representations to potential tenants were accurate. After a brief telephone conversation, however, the trial court dismissed the negligent misrepresentation claim because it determined that prior cases foreclosing a landlord's duty to protect also foreclosed a landlord's duty to exercise reasonable care in assuring that its representations were accurate. After both sides briefed the issue, the court of appeals correctly ruled that the trial court erred. Although the majority agrees that the trial court erred in concluding that a landlord has no duty to exercise reasonable care in assuring that its representations are accurate, it fails to answer the ultimate question: Whether a landlord has such a duty. Making matters worse, it concludes that even if a landlord had such a duty, the facts in this case are not sufficient to survive a summary judgment motion on the issue.

Even if the majority is correct in asserting that the facts as they stand now are insufficient to show that the landlord could have made a negligent misrepresentation, so what? The issue of whether the landlord made a negligent misrepresentation never has been addressed. Although the defendant argues that it is not legally possible for it to make a negligent misrepresentation to a potential tenant, it never has brought a summary judgment motion stating that it did not in fact make a negligent misrepresentation to this potential plaintiff. The plaintiff has had no obligation to produce any facts concerning an actual negligent misrepresentation. Any perceived lack of facts, therefore, is irrelevant to the determination before us. Yet somehow the majority reaches the conclusion that the facts are not sufficient.

If the majority indeed wishes to invoke the § 311 standard on a landlord's representations to potential tenants, then it should do so. The defendant could then bring its summary judgment motion stating that its representations, as a matter of law, did not violate the § 311 standard. If the plaintiff at that time fails to produce facts sufficient for a reasonable jury to find that the defendant made a negligent misrepresentation, then the trial court could dismiss the case. For us to dismiss the case at this time, however, is not only an injustice to the plaintiffs, it is an intolerable foray into the realm of fact finding. Predicting the future might be big business for soothsayers, but it is not a very equitable method of jurisprudence.

GARDEBRING, Justice (dissenting).

I join in the dissent of Justice Tomljanovich.

STRINGER, Justice (dissenting).

I respectfully dissent.

Respondents' claim that appellants had a duty to protect them from the conduct of a third party is, as the majority points out, based on the existence of a special relationship between the parties. Their negligent misrepresentation claim is based on an entirely different duty, however. Since appellants' motion for summary judgment was based solely on the contention that "the Defendants did not have a duty to protect the Plaintiff from the criminal acts of a third party," the duty underlying the negligent misrepresentation claim raised in paragraph 28 of plaintiff's complaint was never put in issue by appellants' summary judgment motion. The trial court erred in considering appellants' motion for summary judgment with respect to the negligent misrepresentation allegation in a telephone conference, without notice to respondents as required by Minn. R. Civ. P. 56.03, and with no opportunity for either party to submit briefs. The next day the court compounded the error when it granted summary judgment on the misrepresentation claim, erroneously con-

cluding that in the absence of "special circumstances," there was no duty. I would therefore affirm the court of appeals reversing the order for summary judgment on the misrepresentation claim and remanding for trial applying the standard set forth in *Florenzano v. Olson*, 387 N.W.2d 168 (Minn. 1986).