Anne Marie GROZDANICH, Plaintiff,

v.

**LEISURE HILLS HEALTH CENTER, Inc., a Minnesota corporation, a/k/a Leisure Hills of Hibbing; Mesabi Regional Medical Center, Inc., a Minnesota corporation, a/k/a University Medical Center—Mesabi; and John Parson, Defendants.**

No. Civ. 97–760(RLE).

United States District Court,
D. Minnesota.

April 30, 1999.

William James Mavity, Pamela Marie Miller, Mavity & Assoc., Minneapolis, MN, for plaintiff.

Michael M. Fluegel, Fluegel Helseth McLaughlin Anderson & Brutlag, Morris, MN, for Leisure Hills Health Center, Inc., St. Francis Health Service of Morris, Inc., defendants.

Joseph John Roby, Jr., Laura J. Schacht, Johnson Killen Thibodeau & Seiler, Duluth, MN, for Mesabi Regional Medical Center, Inc., defendant.

John Parson, Hibbing, MN, pro se.

## MEMORANDUM ORDER

ERICKSON, United States Magistrate Judge.

### I. *Introduction*

This matter came before the undersigned United States Magistrate Judge pursuant to the parties consent, made in accordance with the provisions of Title 28 U.S.C. § 636(c), upon the Plaintiff's Motion to Reconsider. At the parties' request, this matter was considered on their written submissions, and without oral argument. For these purposes, the Plaintiff appeared by Pamela M. Miller, Esq., and Defendant University Medical Center—Mesabi ("UMC–M") appeared by Joseph J. Roby, Jr. and Laura J. Schacht, Esqs. The other Defendants have made no appearance for purposes of this Motion. For reasons which follow, the Motion to Reconsider is denied.

### II. *Factual and Procedural Background*

A full description of the background of this sexual harassment case is set forth in our Memorandum Order, dated September 30, 1998, which resolved a series of Motions for Summary Judgment that were filed by UMC–M, and the Defendant Leisure Hills Health Center, Inc. ("Leisure Hills"). See, *Grozdanich v. Leisure Hills Health Center, Inc.*, 25 F.Supp.2d 953 (D.Minn.1998). The recitation of the facts, which was there recounted, viewed the evidence in a light most favorable to the Plaintiff, see, *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970), and will not be reiterated here, for we now narrow the focus of our analysis to the events which bear upon the request for reconsideration.

The Plaintiff, who works as a nurse at Leisure Hills, was sexually assaulted in that workplace on three separate occasions, on May 22, 1996, by her supervising nurse, the Defendant John Parson ("Parson"). *Id.* at 962–63. In each assaultive episode, Parson groped the Plaintiff's intimate body parts, which was accomplished, on two of those occasions, through the Plaintiff's outer clothing. The Record is uncontested that the Plaintiff did not suffer any demonstrable, physical injury as a result of Parson's acts. *Id.* at 988.

The Plaintiff filed suit against Leisure Hills for sexual harassment under Title VII, *Title 42 U.S.C. § 2000e, et seq.*, the Minnesota Human Rights Act ("MHRA"), *Minnesota Statutes Section 363.01, et seq.*, as well as claims for battery, assault, negligent hiring/retention/supervision, and for a negligent and intentional infliction of emotional distress. The Plaintiff named UMC–M as a Defendant, claiming that it was liable, for acts its agents performed as Parson's former employer. Specifically, agents of UMC–M provided Leisure Hills with a favorable employment recommenda-

tion of Parson, even though UMC–M was aware of several instances of alleged sexual assault, and harassment, that Parson purportedly had committed. The Plaintiff claimed that UMC–M was liable to her for negligence *per se*, because UMC–M had not reported Parson's suspected abuse of a vulnerable adult patient, in violation of the Vulnerable Adults Act, *Minnesota Statutes Section 626.557*, and because, in the Plaintiff's view, UMC–M's favorable recommendation was an act of negligent misrepresentation, and a negligent failure to warn. In addition, the Plaintiff asserted several claims directly against Parson.

On September 30, 1998, this Court granted Leisure Hills' Motion for Summary Judgment, in part, allowing only the Plaintiff's Title VII, and portions of her negligent retention and supervision claims, to proceed to Trial. We granted UMC–M's Motion for Summary Judgment on the Plaintiff's claims against it, but we denied, in part, UMC–M's Motion for Summary Judgment on certain crossclaims for indemnity, which were asserted by Leisure Hills. Parson did not move for Summary Judgment, and the Plaintiff's claims against him were unaffected by the Court's other rulings.

On March 22, 1999, when this case was at the cusp of Trial, the parties settled all of their disputes—save two. Given the Court's dismissal, with prejudice, of the Plaintiff's claims against UMC–M, no settlement was reached between those parties. Second, the Plaintiff did not resolve her claims against Parson.[1] With the claims against Parson, alone, remaining to be adjudicated, the Plaintiff has requested that the Court reconsider its earlier dis-

missal of her claim against UMC–M for negligent misrepresentation.

### III. *Discussion*

■ A. *Standard of Review.* At the outset, we are obligated to observe that the Federal Rules of Civil Procedure do not recognize, or otherwise provide for, a "Motion to Reconsider." *Reynolds v. Condon,* 908 F.Supp. 1494, 1524 (N.D.Iowa 1995). When a moving party neglects to specify the Rule, upon which it premises a self-styled Motion to Reconsider, "that party leaves the characterization of the motion to the court's somewhat unenlightened guess ***." *Sanders v. Clemco Indus.,* 862 F.2d 161, 168 (8th Cir.1988). Where, as here, claims against another party in the litigation remain unresolved, a Motion to Reconsider must be addressed under the rubric of Rule 54(b), Federal Rules of Civil Procedure. See, *Interstate Power Co. v. Kansas City Power & Light Co.,* 992 F.2d 804, 807 (8th Cir.1993) (holding that District Court should have treated Motion to Reconsider, heard before all parties' claims were decided, under Rule 54(b)).

■ Rule 54(b) provides, in pertinent part, that "any order or other form of decision, however designated, which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties *** is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities." *Rule 54(b), Federal Rules of Civil Procedure.* While, as a general proposition, "questions once decided [should] not be subject to continued argument," in extraordinary circumstances, a

---

1. There will not be a final Judgment in this matter, and no appeal may be taken from our partial disposition of the issues through Summary Judgment, since the Plaintiff's claims against Parson have neither been adjudicated, nor informally resolved. See, *Rule 54(b), Federal Rules of Civil Procedure; Interstate Power Co. v. Kansas City Power & Light Co.,* 992 F.2d 804, 807 (8th Cir.1993) ("it is only the 'special case' that warrants an immediate appeal from a partial resolution of the lawsuit.")

[citation omitted]. In order that this case not lapse into the doldrums, we direct the Plaintiff to advise the Court, in writing, **within 10 days of the date of this Order,** whether she intends to prosecute her case against Parson and, if a decision to prosecute that claim is reached, then the parties, who remain in this action, are to advise this Court's Calendar Clerk, **by no later than 15 days after the date of this Order,** of their amenability to an expedited Trial setting.

District Court will always retain the authority to revisit its earlier decisions, under this Rule, before the entry of a final Judgment, in order to correct manifest error. *Conrod v. Davis*, 120 F.3d 92, 95 (8th Cir.1997), cert. denied, —— U.S. ——, 118 S.Ct. 1531, 140 L.Ed.2d 681 (1998). For example, a Motion to Reconsider, pursuant to Rule 54(b), may be justified on the basis of an intervening change in controlling law. See, e.g., *Richman v. W.L. Gore & Associates, Inc.*, 988 F.Supp. 753, 755 (S.D.N.Y.1997); *Washington v. Garcia*, 977 F.Supp. 1067, 1069 (S.D.Cal.1997); *McCoy v. Macon Water Auth.*, 966 F.Supp. 1209, 1222 (M.D.Ga.1997). However, it must be emphasized that, because reconsideration "interrupts the flow of litigation towards its conclusion," it "should not serve as a vehicle to identify facts or raise legal arguments which could have been, but were not, raised or adduced during the pendency of the motion of which reconsideration was sought." *In re Potash Antitrust Litigation*, Civ. No. 3–93–197, 1994 WL 2255 *1 (D.Minn., Jan.4, 1994).

B. *Legal Analysis.* The starting point of our analysis rests in the ruling that the Plaintiff urges us to reconsider. As noted, the Plaintiff had claimed that UMC–M proffered a negligent misrepresentation of fact, to Leisure Hills, when it vouched for Parson's professional qualities without mentioning his alleged prior sexual misconduct which, purportedly, occurred in the discharge of his nursing responsibilities at UMC–C. The tort of "negligent misrepresentation involving the risk of physical harm," has not been recognized under Minnesota common law. Most recently, the Minnesota Supreme Court expressly decided not to decide whether such a claim should be recognized, because the appellant did not satisfy all of the elements of that tort, as the action has been defined in Section 311 of the Second Restatement of Torts. See, *Smith v. Brutger Cos.*, 569 N.W.2d 408, 413 (Minn.1997).

In the Restatement, the elements of this variant of negligent misrepresentation are defined as follows:

(1) One who negligently gives false information to another is subject to liability for physical harm caused by action taken by the other in reasonable reliance upon such information, where such harm results

   (a) to the other, or

   (b) to such third persons as the actor should reasonably expect to be put in peril by the action taken.

(2) Such negligence may consist of failure to exercise reasonable care

   (a) in ascertaining the accuracy of the information, or

   (b) the manner in which it is communicated.

*Restatement (Second) of Torts § 311.*

From this definition, the Minnesota Supreme Court abstracted the following operative elements of a negligent misrepresentation claim: "(1) a duty of reasonable care in conveying information; (2) a breach of that duty by negligently giving false information; (3) reasonable reliance on the misrepresentations, which reliance is the proximate cause of physical injury; and (4) damages." *Smith v. Brutger Cos.*, supra at 413. Observing that the appellant, in *Smith*, had not shown reasonable reliance on the alleged misrepresentations, the Court decided that a claim that was not, itself, actionable was not "the appropriate vehicle" for recognizing the tort of negligent misrepresentation involving the risk of physical harm. *Id.*

Applying similar logic, we dismissed the Plaintiff's negligent misrepresentation claim against UMC–M, without deciding whether such a cause of action would ultimately be recognized by the Minnesota Supreme Court, because she had not met one of the elements of the proposed tort.[2]

---

2. We separately considered Leisure Hills' crossclaim against UMC–M for negligent misrepresentation involving pecuniary loss, as

defined in Restatement (Second) of Torts § 552, and as recognized by the Minnesota Supreme Court in *Bonhiver v. Graff*, 311

The Plaintiff, we held, had not suffered any physical injury as a result of the asserted misrepresentation, but had only alleged a claim of emotional harm. *Grozdanich v. Leisure Hills Health Center, Inc.,* supra at 988. We relied on the provisions of the Restatement, itself, as well as the Illinois Supreme Court's interpretation of the term "physical harm," in *Brogan v. Mitchell Int'l, Inc.,* 181 Ill.2d 178, 229 Ill. Dec. 503, 692 N.E.2d 276 (1998), which held that a purely emotional injury was not "physical harm" under the Restatement. Thus, we ruled that, even assuming that a negligent misrepresentation claim, which involved a risk of physical harm, could be actionable under Minnesota law, there was no genuine issue of material fact, which would here preclude Summary Judgment, because the Plaintiff could not satisfy the elements of that presumed tort. Citing recent Minnesota case authority, the Plaintiff urges us to reconsider two aspects of our prior ruling.

First, the Plaintiff cites *Special Force Ministries v. WCCO Television,* 584 N.W.2d 789 (Minn.App.1998), rev. denied (Minn., Dec. 15, 1998), to support her contention that even emotional distress should be embraced within the term "physical harm," as it has been employed in the Restatement. In *Special Force,* the Minnesota Court of Appeals considered a claim by a nursing home, and affiliated personnel, against a television station for, among other assertions, an international misrepresentation. A station worker had applied for work as a volunteer at the nursing home, and had knowingly misrepresented that she was jobless, and was interested in the nursing home's ministry, even though her real purpose in applying for employment was to gather video footage of potential abuse of elderly patients, by the ministry's employees. In an attempt to defeat the nursing home's fraud claim, the television station argued that there were no damages attributable to the misrepresentation. The Minnesota Court of Appeals rejected this reasoning, explaining that "a fact issue arises as to whether respondents' claimed damages for emotional distress, humiliation, and aggravated physical and mental ailments were proximately caused by appellants' deceit." *Id.* at 794.

The suggestion, that we apply the reasoning of *Special Force Ministries* to this case, is premised on the assumption that negligent and intentional misrepresentation claims present no distinctions with respect to the availability of damages for a purely emotional injury. Cf., *Lickteig v. Alderson, Ondov, Leonard & Sween, P.A.,* 556 N.W.2d 557, 560 (Minn.1996) (a party may recover for stand-alone, emotional distress damages "when there has been a 'direct invasion of the plaintiff's rights such as that constituting slander, libel, malicious prosecution, seduction, or other like willful, wanton, or malicious conduct.' "), quoting *State Farm Mut. Auto. Ins. Co. v. Village of Isle,* 265 Minn. 360, 368, 122 N.W.2d 36, 41 (1963). Unlike the circumstances in *Special Force Ministries,* no intentional wrongdoings are asserted against UMC–M and, therefore, the consideration of intentional tort cases does not meaningfully advance our analysis.

As we have noted, the slender thread of Minnesota authority, which addresses the cause of action, maintains that negligent misrepresentation, which involves the risk of physical harm, requires proof that the plaintiff's reliance on the assertedly negligent misrepresentations "is the proximate

Minn. 111, 121–22, 248 N.W.2d 291, 298–99 (1976), and reaffirmed in *Florenzano v. Olson,* 387 N.W.2d 168, 174 n. 3 (Minn.1986). For reasons previously expressed, we denied UMC–M's Motion for Summary Judgment on that claim. *Grozdanich v. Leisure Hills Health Center, Inc.,* 25 F.Supp.2d 953, 989–91 (D.Minn.1998). While a companion tort to negligent misrepresentation involving risk of physical harm, the claim urged by Leisure Hills involved different elements of proof, and we do not address that claim further, as the Plaintiff did not allege such a claim against UMC–M, and the claim is irrelevant to our analysis here.

cause of **physical injury** \*\*\*." *Smith v. Brutger Co.*, supra at 413 [emphasis added]. If the Supreme Court, in *Smith,* contemplated a wider scope of redressable injury, it could have simply omitted the word "physical" from its recitation of the requisite elements of that claim. The Court's insistence upon a distinction between "physical" and other types of injury, at least for the sake of discussing a yet-to-be recognized cause of action, conforms with the weight of case authority from other jurisdictions, which recognize that distinction as well. See, e.g., *D.S.A., Inc. v. Hillsboro Independent School Dist.,* 973 S.W.2d 662, 664 (Tex.1998) ("A party may recover \*\*\* only if actual physical harm results."); *Brogan v. Mitchell Int'l, Inc.,* supra at 278 ("There exists no broad duty to avoid misrepresentations that cause only emotional harm."); *Randi W. v. Muroc Joint Unified Sch. Dist.,* 14 Cal.4th 1066, 60 Cal.Rptr.2d 263, 929 P.2d 582, 589 (1997) ("In the absence, however, of resulting physical injury, or some special relationship \*\*\* [there is] no duty of care extending to third persons").

■ We cannot foreclose the possibility that, if the Minnesota Supreme Court were to adopt Section 311 of the Restatement, and recognize the tort of negligent misrepresentation involving the risk of physical harm, it might expand the scope of such a claim so as to encompass purely emotional injuries, such as those suffered by the Plaintiff, but we are without the slightest showing that the Supreme Court would follow an avenue that was rejected, at least implicitly, in *Smith.* There, the majority took pains to explain that the Court's prior decision, in *M.H. v. Caritas Family Servs.,* 488 N.W.2d 282 (Minn.1992), did not consider, let alone decide, whether a claim of "grievous mental pain and anguish" satis-

fied the "physical harm" element of Section 311. As explained by the Court:

> [In Caritas], [w]e clearly did not adopt the specific tort of negligent misrepresentation resulting in physical harm. The plaintiffs in Caritas did not specifically allege physical harm in their complaint. Id. at 290. They did, however, allege that they had "suffered grievous [sic] mental pain and anguish." Plaintiff's Complaint at 3, Appellant's Brief at Appendix 4, *M.H. v. Caritas Family Servs.,* 475 N.W.2d 94 (Minn.App.1991), rev'd in part and aff'd. in part, 170 Wis.2d 155 [sic], 488 N.W.2d 282 (Minn. 1992). Because the question before us was so narrow, we did not address the broader issue of alleged harm. We did not answer the broader question of whether negligent misrepresentation resulting in physical harm was a viable tort in Minnesota.

*Smith v. Brutger Companies,* 569 N.W.2d 408, 414 n. 4 (Minn.1997). While some might argue that we should extend no weight to these observations of the majority—since they are, in a strict sense, *dicta*—we do not believe that the Minnesota Supreme Court would expend the effort to disclaim any impression, that the Court had endorsed the application of negligent misrepresentation to claims of "emotional distress," unless that disclaimer was seriously held. Until the Supreme Court should alert us to an intent, that emotional injuries are recoverable in a claim for negligent misrepresentation, our best assessment of the state of Minnesota law is that emotional complaints, standing alone, are not recoverable under a negligent misrepresentation theory.[3]

The Plaintiff also argues that we erred in holding that the Plaintiff was not physically injured, when she had endured the three sexual assaults. The Plaintiff points

---

**3.** Again, as a Federal Court presiding over supplemental State law claims, "[i]n the absence of controlling State law, a Federal Court \*\*\* must predict how the State's highest Court would decide the issue." *Grozdanich v. Leisure Hills Health Center, Inc.,* supra

at 987, citing *Commissioner v. Estate of Bosch,* 387 U.S. 456, 87 S.Ct. 1776, 18 L.Ed.2d 886 (1967), and *First Colony Life Ins. Co. v. Berube,* 130 F.3d 827, 829 (8th Cir. 1997).

out that, in *Wall v. Fairview Hosp. and Healthcare Servs.*, 584 N.W.2d 395 (Minn. 1998), which was decided after the Summary Judgment Motions were argued, but before our decision issued, the Minnesota Supreme Court determined, at least by implication, that the act of rape was, *per se*, physically injurious. One of the plaintiffs in *Wall*, who suffered from a mental disorder, had been repeatedly raped by a health care worker during her hospitalization. The plaintiff brought a claim against the hospital, for the negligent infliction of emotional distress, which was premised upon the hospital's inability to prevent the attack. The Supreme Court rejected this claim because the plaintiff had not been within the "zone of danger" but, having been raped by the caregiver, she had been "physically harmed by the abuse." *Id.* at 408.

The Plaintiff argues that we should extrapolate from the decision in *Wall*, as well as from certain other cases, which have suggested that a rape amounts to the infliction of physical harm, so as to conclude that Parson's offensive physical advances, which included nonconsensual touching of the Plaintiff's intimate body parts, would satisfy the "physical injury" element of Section 311, even if the Plaintiff suffered no actual, physical injury. Given the dearth of Minnesota case authority on this subject, we concede that reasonable minds could differ as to where the line should fall between physical and non-physical injuries, in the context of intentional violations of the sanctity of an individual's body. Beyond rape, which the Minnesota Supreme Court appears to consider as a physically injurious act, there is simply no recognizable indication, in Minnesota case law, as to how the Supreme Court would apply the Restatement's physical injury requirement in the context of a less brutally invasive sexual assault.

In the absence of such authority, we turn to a textual analysis. Recalling that the Restatement considers "physical harm" to be indispensable to a successful claim under Section 311, we can draw some guidance from the Restatement's provision that "[t]he words 'physical harm' are used throughout the Restatement of [Torts] to denote the physical impairment of the human body, or of land or chattels." *Restatement (Second) of Torts* § 7(3). The commentary to Section 7 reveals that, in the context of a physical impairment of the human body, physical harm is synonymous with "bodily harm," as defined in Section 15 of the Restatement. *Id.*, comment e.

In turn, Section 15 defines "bodily harm" as "any physical impairment of the condition of another's body, or physical pain or illness." *Restatement (Second) of Torts* § 15. Had the drafters of Section 311 intended to expand its reach beyond physical harm, physical impairment, and physical pain or illness, we are satisfied they would have designated injuries, both *mental* and physical, or they would have more sweepingly defined the term "physical injury" so as to encompass something other than physical injuries to another's body. Notably, in a comment to Section 15, the drafters recognized that, unlike a claim for negligent misrepresentation, an action for battery allows a recovery for a physical contact **"that causes no bodily harm \* \* \*."** *Id.*, comment a [emphasis added]. We believe that this textual framework, which necessarily applies to Section 311's employment of the term "physical harm," excludes offensive bodily contact from qualifying as "physical harm," even though the contact may offend a reasonable sense of personal dignity,[4] unless the contact produces "physical impairment of the condition of another's body, or physical pain, or illness."

We find this textual result to be wholly consistent with the evident indicators which chronicle the Minnesota Supreme

---

4. Under the Second Restatement, a physical contact "is offensive if it offends a reasonable sense of personal dignity." *Restatement (Second) of Torts* § 19.

Court's cautious, case-by-case approach, in extending the scope of negligent misrepresentation claims, see, *Smith v. Brutger Companies,* supra at 415–17 (Tomljanovich, J. dissenting), as well as the Court's historic hesitancy to expand the availability of damages for emotional distress. As the Supreme Court has recently explained:

> We have not been anxious to expand the availability of damages for emotional distress. *K.A.C. v. Benson,* 527 N.W.2d 553, 559 (Minn.1995); *Hubbard v. United Press Int'l, Inc.,* 330 N.W.2d 428, 437–38 (Minn.1983). This reluctance has arisen from the concern that claims of mental anguish may be speculative and so likely to lead to fictitious allegations that there is a potential for abuse of the judicial process. *Hubbard,* 330 N.W.2d at 438. Thus, we have been careful to limit the availability of such damages to "those plaintiffs who prove that emotional injury occurred under circumstances tending to guarantee its genuineness." *Id.* at 437

*Lickteig v. Alderson, Ondov, Leonard & Sween,* supra at 560; see also, *K.A.C. v. Benson,* 527 N.W.2d 553, 559 (Minn.1995) ("The *** requirement we adopt today is consistent with the court's historical caution regarding emotional distress claims.").

Given these evident forces in Minnesota law, we conclude that the Minnesota Supreme court would not recognize a claim for negligent misrepresentation involving the risk of physical harm under the circumstances presented here, and we reaffirm our prior ruling on this issue. Given the Plaintiff's admission, that she suffered no bodily injury, her claim for negligent misrepresentation involving the risk of physical harm cannot stand. *Plaintiff's Answers to Leisure Hills' Interrogatories, No. 11, Roby Affidavit, Exhibit C; Plaintiff's Deposition,* at pp. 148–49, 192–93.

NOW, THEREFORE, It is—

ORDERED:

1. That the Plaintiff's Motion to Reconsider [Docket No. 55] is DENIED.

2. That the Plaintiff must notify the Court, in writing, **within 10 days of the date of this Order,** whether she intends to prosecute her case against Parson, and that, if she elects to proceed to Trial against Parson, then counsel for the Plaintiff, and Parson, who appears *pro se,* are to jointly contact the Court's Calendar Clerk, **within 15 days of the date of this Order,** in order to set a Trial date.