Christopher ERICKSON, a minor, By and Through his Guardian Ad Litem, William BUNKER, et al., Appellants,

v.

AMERICAN HONDA MOTOR COMPANY, INC., et al., Defendants,

Burnsville Sports Center, and Gene Kuss, Respondents.

No. C7–89–1674.

Court of Appeals of Minnesota.

May 8, 1990.

Review Denied July 13, 1990.

Stanley E. Karon, Karon, Jepsen & Daly, P.A., St. Paul, and Robert Edwards, Dorn Law Firm, Anoka, for Christopher Erickson, a minor, by and through his Guardian Ad Litem, William Bunker, et al., appellants.

William M. Hart, Meagher, Geer, Markham, Anderson, Adamson, Flaskamp & Brennan, Minneapolis, for Burnsville Sports Center, respondent.

Richard A. Beens, Anoka, for Gene Kuss, respondent.

Considered and decided by CRIPPEN, P.J., and KALITOWSKI and MULALLY,* JJ.

## OPINION

CRIPPEN, Judge.

Appellant Christopher Erickson was seriously injured in an accident involving a four-wheeled all-terrain vehicle (ATV) sold by respondent Burnsville Sports Center. Following a jury finding that Burnsville negligently failed to warn of the dangers of the ATV, the trial court awarded damages for appellants in excess of $400,000. The court calculated prejudgment interest on only $75,000 of the award, because Burnsville had made a settlement offer of that amount. Appellants contend the offer was incomplete because it did not include release of their obligation, accepted in an earlier partial settlement, to indemnify for a claim of Burnsville against the manufacturer. We agree, and direct modification of the prejudgment interest award. We find no merit in respondent's contention that it was entitled to judgment notwithstanding the verdict.

## FACTS

In December 1984, Patricia Kuss, Christopher Erickson's aunt, bought an ATV from respondent Burnsville Sports Center as a Christmas gift for her husband, Gene

---

* Acting as judge of the Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 2.

Kuss. The couple had not previously owned an ATV. Patricia Kuss testified the Burnsville salesman offered no information about the potential dangers of operating an ATV. She only learned of the existence of the owner's manual when she inquired whether there were any instructions with the machine as it was being loaded onto her truck. The person loading the ATV then advised her the instructions were in the machine. The Burnsville salesman did not recall the sale.

Christopher Erickson, then 12 years old, his 16–year–old brother Steve, and their parents visited the Kuss family on December 25, 1984. Before they came, Gene Kuss looked for the owner's manual in the machine, but could not find it. He was able to start the vehicle and drove it for a short distance.

When the Erickson family arrived, Gene Kuss showed Steve Erickson how to operate the ATV and allowed him to drive it. Later, the two brothers went for a ride with Christopher driving and Steve as a passenger. The boys drove off the road and up a hill. Near the top of the hill the machine tipped over and began to roll. The ATV's foot peg struck Christopher in the head, causing permanent brain damage.

Appellants brought this action against respondent and Honda Motor Company, the manufacturer of the ATV. A court-monitored settlement conference was held in February 1989. Appellants settled their claims against Honda on a *Pierringer* release, and agreed to indemnify and hold Honda harmless from all other claims. Respondent's counsel were present at the conference and indicated an intent to pursue Honda for indemnity if appellants recovered a judgment against Burnsville; under Honda's dealer contract it must contribute to payment of Burnsville's attorney fees in proceedings such as these.

Trial began in March 1989. Shortly before this, appellants offered to settle for $2.5 million. During the second week of trial, respondent offered $75,000. Appellants rejected this offer. By letter on March 15, respondent reiterated the $75,000 offer. There were no further written

offers. None of the offers expressly released appellants from their obligation to indemnify Honda for claims of Burnsville, and the parties did not discuss this issue.

The jury returned a verdict finding Burnsville negligent in the manner in which it sold the ATV. The percentage of fault was attributed as 74% for Honda, 21% for Burnsville, and 5% for Gene Kuss. Total damages in excess of $2.9 million were awarded to Christopher. The jury also awarded $32,000 to Christopher's father for loss of his services. The trial court entered judgment against Burnsville for its share of the damages and prejudgment interest, less a proportionate collateral source deduction for medical expenses paid by the Erickson's insurer. The court denied the parties' post-trial motions and this appeal followed.

## ISSUES

1. Did respondent's written settlement offer clearly and completely dispose of the claims between the parties where the offer did not address appellants' prospective liability as indemnitors on respondent's claims against the manufacturer?

2. Does the record supply any competent evidence to support the jury's verdict?

## ANALYSIS

1. Generally, the prevailing party is entitled to interest on the entire judgment from the time the action was commenced. Minn.Stat. § 549.09, subd. 1(b) (1988). The statute provides, however, that if the losing party made a written settlement offer that is closer to the judgment than the prevailing party's offer, interest is calculated only on the amount of the losing party's settlement offer or the judgment, whichever is less. *Id.* Appellants challenge the trial court's application of this provision as contrary to *Hodder v. Goodyear Tire and Rubber Co.*, 426 N.W.2d 826 (Minn.1988), cert. denied, —— U.S. ——, 109 S.Ct. 3265, 106 L.Ed.2d 610 (1989).

In *Hodder*, the plaintiff was injured on the job when a tire exploded. He sued the tire manufacturer, who brought in the em-

ployer as a third-party defendant. The employer counter-claimed for reimbursement from Goodyear for workers' compensation benefit payments. Goodyear offered a settlement that did not include payment on the employer's claims. The supreme court affirmed the award of prejudgment interest on the entire judgment, despite the manufacturer's settlement offer that was closer to the judgment than the plaintiff's offer. The court described the requirements that a settlement offer must meet to limit prejudgment interest:

> Valid offers and counteroffers under section 549.09 must be in writing and must offer, in sufficiently clear and definite terms, to dispose completely the claims between the negotiating parties. The statute aims to promote settlements and this is best accomplished by offers which are straightforward and would in an effective and practical manner settle matters between the negotiating parties.

*Id.* at 840.

■ The trial court distinguished *Hodder*, observing that the offer there omitted a claim against the offering defendant. Here, the offer omitted a claim by the offering defendant that could be charged against the plaintiffs. In addition, the omitted claim in *Hodder* was pleaded as part of the proceedings being litigated; here, as respondent observes, Burnsville's claim against Honda arises under a contract and will be separately pursued.

We conclude these distinctions are immaterial to the holding and rationale of *Hodder*. Because Burnsville did not disclose whether appellants were released from prospective liability for Burnsville's claims against Honda, its offer did not definitely and completely dispose of the claims between the parties. Burnsville was fully aware of the risk that appellants would be called upon to indemnify Honda for its obligation to Burnsville for fees incurred in this case. Burnsville offered only the "piecemeal kind of settlement" that the *Hodder* court said does not meet the requirements for a valid offer under section 549.09. *Hodder*, 426 N.W.2d at 841.

Appellants make three other contentions on appeal. First, they assert Burnsville's March 15 letter is not an offer at all, but merely comments on a prior oral offer. We disagree, and conclude as did the trial court that the letter effectively restates the prior offer.

■ Second, appellants argue the offer was invalid because it was not made 60 days prior to trial. The trial court correctly observed that Minn.Stat. § 549.09, subd. 1(b), does not require offers to be made 60 days prior to the verdict, but only sets a time restriction on replies. The 60–day rule may negate some counteroffers but does not constitute a rule on the timeliness of offers.

■ Finally, appellants contend the collateral source deduction statute, Minn.Stat. § 548.36 (1988), unconstitutionally interferes with contractual rights because the Ericksons' insurance policy does not contain a subrogation clause in favor of the carrier. We decline to review this issue because appellants failed to notify the attorney general of the challenge to the constitutionality of this statute. *See* Minn.R. Civ.App.P. 144; *Waldner v. Peterson*, 447 N.W.2d 217, 219 (Minn.App.1989).

■ 2. Judgment notwithstanding the verdict may be granted only when the evidence is so overwhelming on one side that reasonable minds cannot differ as to the proper outcome. *Lamb v. Jordan*, 333 N.W.2d 852, 855 (Minn.1983). To determine the propriety of an order denying .JNOV, the applicable standard is whether there is any competent evidence reasonably tending to sustain the verdict. *Bisher v. Homart Development Co.*, 328 N.W.2d 731, 733 (Minn.1983).

■ It is undisputed that the trial court correctly instructed the jury regarding respondent's duty to warn under Restatement (Second) of Torts § 401 (1965). We conclude, as did the trial court, that there is evidence reasonably tending to show: (1) Burnsville had reason to know of the dangers of operating the ATV; (2) the warnings provided fell short of those reasonably required and Burnsville breached its duty

78

of care; and (3) the failure to warn caused the injury.

Burnsville admits it knew of stability problems with the three-wheeled, all-terrain carrier (ATC), but contends it reasonably believed the four-wheeled ATV, which had been on the market for less than six months at the time of the accident, was much more stable and safe. Burnsville does not dispute the expert testimony at trial that, despite the four-wheel configuration, the ATV is no more stable than the ATC and has the same tendency to roll over. There was evidence that Burnsville officers knew the warnings in the owner's manuals for the ATC and ATV were virtually identical. In November 1984, Burnsville received a letter from Honda regarding the increasing number of ATV accidents, and directing dealers to make sure customers knew how to properly operate the vehicle and to provide them with safety materials prepared by Honda, including a video showing and a brochure. This evidence reasonably sustains a finding that Burnsville knew or had reason to know of the dangers of operating the ATV.

Burnsville argues there is no competent evidence that it failed in its duty to warn, because the owner's manual was delivered with the ATV and two small warning labels were affixed to the vehicle. One label near the ignition advised the owner's manual should be carefully read before riding, and the other label, located at the back of the machine, indicated the vehicle was for an operator only, without passengers. Gene Kuss testified he did not observe these labels. The evidence also showed that, despite Burnsville's knowledge that improper ATV use could result in serious injury, Burnsville failed to specifically warn Patricia Kuss of the dangers, show her the safety video, or provide her with the safety brochure, contrary to Honda's directions. Burnsville's employees did not advise Patricia Kuss that an owner's manual existed until she inquired before leaving the store. Even then, Patricia was not told where the manual was located in the machine. There was competent evidence that the warnings Burnsville provided fell short of those reasonably required.

Finally, both Patricia and Gene Kuss testified that if they had been made aware of the dangers of improper ATV use, they would not have allowed the Erickson children to operate the vehicle or to be passengers. This testimony is sufficient evidence that the failure to warn caused the injury.

■ Respondent raises three additional issues. First, respondent contends the total collateral source deduction for medical expenses paid by the insurer should have been subtracted only from the judgment against respondent, not from the total award. We disagree. Damages paid from a collateral source are part of the total award and are not attributable to any one defendant. The trial court properly applied the collateral source deduction statute.

■ Second, Burnsville argues there is no competent evidence to support the damages for pain and disability and impairment of future earning capacity. The jury awarded $22,000 in damages for past pain and disability, $90,000 for future pain and disability, and $688,000 for loss of future earning capacity. The trial court found the verdict amounts were well within the potential dollar parameters for the facts of the case, and we agree. One of Christopher Erickson's treating physicians testified that Christopher is not in a persistent, unconscious state and he does experience pain. A rehabilitation psychologist presented several professional career scenarios that he said could have been reasonably expected for Christopher based on his school records and his parents' educational achievements. There was sufficient evidence to support the damages for pain and disability and impairment of future earning capacity.

■ Finally, respondent argues the trial court abused its discretion by admitting evidence regarding three-wheeled ATCs. Respondent argues that the ATC evidence does not tend to prove or disprove that it had reason to know of the dangers of the four-wheeled ATV, and that admission of such evidence had an overwhelming prejudicial effect. However, there was evidence that the ATC and ATV are substantially

similar. Moreover, the danger surrounding improper ATC operation bore heavily on Burnsville's knowledge of similar dangers in the use of the ATV. There was no abuse of discretion in admitting the ATC evidence.

## DECISION

We affirm the trial court's judgment, except that the case is remanded for a recalculation of prejudgment interest consistent with this opinion.

Affirmed in part, reversed in part, and remanded.