# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 03-1865

_____

|  |  |  |
|---|---|---|
| Gloria Tuttle, as Trustee for the next-of-kin of Bill Tuttle a.k.a. William R. Tuttle, deceased, | * * * * | |
| Appellant, | * * | |
| v. | * * | Appeal from the United States District Court for the |
| Lorillard Tobacco Company; National Tobacco Company, L.P.; The Pinkerton Tobacco Company; Smokeless Tobacco Council, | * * * * * | District of Minnesota. |
| Appellees, | * * | |
| _____ | * | |
| Minnesota Trial Lawyers Association, | * * | |
| Amicus on Behalf of Appellant. | * * | |

_____

Submitted: February 11, 2004
Filed: July 30, 2004

_____

Before MORRIS SHEPPARD ARNOLD, HANSEN, and RILEY, Circuit Judges.

_____

RILEY, Circuit Judge.

As a young professional baseball player Bill Tuttle (Tuttle) began chewing smokeless tobacco in 1955, and continued chewing regularly until 1993. His product of choice was Beech-Nut, which was manufactured by Lorillard Tobacco Company and later acquired in 1988 by National Tobacco Company. In October 1993, Tuttle was diagnosed with oral cancer, and he later died in July 1998 from related complications. On September 21, 1999, Tuttle's widow, Gloria Tuttle[1] (Mrs. Tuttle) filed a lawsuit against several smokeless tobacco manufacturers and their trade association, alleging both common law claims of negligence, fraud, and civil conspiracy, as well as statutory claims alleging violations of several Minnesota consumer protection statutes. Following extensive discovery, the defendants moved for summary judgment on all claims. The district court granted summary judgment on the claims and entered judgment in favor of the defendants. Mrs. Tuttle appeals. We reverse the district court's ruling on the statute of limitations, but conclude Mrs. Tuttle's claims are legally insufficient, because her claims fail for want of admissible proof of causation and reliance. We, therefore, affirm the district court's judgment.

## I.    BACKGROUND

### A.    Factual Summary

After experiencing difficulty swallowing, Tuttle scheduled an appointment with his physician, Dr. Timothy Regan (Dr. Regan), on October 6, 1993. Tuttle presented complaining of an oral lump or mass that had been growing in his right cheek for ten days. Tuttle told Dr. Regan he had had a small lesion in his cheek for a long time but the lump had recently gotten bigger. Dr. Regan observed a 3 by 4 centimeter indurated mass in Tuttle's right cheek, and a 2 by 2 centimeter mass inside Tuttle's mouth near his parotid duct. Tuttle told Dr. Regan he wore dentures and he chewed tobacco, predominantly on the left side of his mouth. Based on his observations and Tuttle's patient history, Dr. Regan diagnosed Tuttle's right cheek

---

[1]Since filing the lawsuit, Mrs. Tuttle has remarried and is now named Gloria Tuttle Fisher.

2

mass as parotitis[2] and prescribed an antibiotic and Advil for discomfort. Dr. Regan also referred Tuttle to Dr. Steven Koutroupas (Dr. Koutroupas), an ear, nose, and throat specialist. (otolaryngologist).

Dr. Koutroupas examined Tuttle on October 8, 1993, and observed a 2.5 centimeter fungating mass in the right buccal mucosa. Dr. Koutroupas's notes reflect that Tuttle noticed the right cheek mass "about 10 days ago and it suddenly increased in size." After Dr. Regan started Tuttle on an antibiotic, his right cheek mass decreased markedly in size. Dr. Koutroupas also noted Tuttle was a "long time tobacco chewer from his baseball days." Having the impression that the right cheek mass looked like "an infected tumor," Dr. Koutroupas took a biopsy of the mass. Three days later, on October 11, 1993, the biopsy revealed an advanced squamous cell buccal carcinoma, and Dr. Koutroupas informed Tuttle he had oral cancer. Dr. Koutroupas referred Tuttle to Dr. George Adams (Dr. Adams), a reputed head and neck surgeon at the University of Minnesota Hospital and Clinic.

Dr. Adams examined Tuttle on October 23, 1993, and observed "a large buccal carcinoma that has now reached golf ball size and showing a massive protrusion of the right upper cheek." On November 11, 1993, Dr. Adams performed surgery on Tuttle and excised from his right oral cavity an 8 by 8 centimeter right buccal carcinoma. In his discharge summary dated November 23, 1993, Dr. Adams noted, upon physical examination, Tuttle's right cheek mass measured approximately 11 by 12 centimeters.

Following surgery, Tuttle underwent radiation therapy, which ended in March 1994. Thereafter, Tuttle experienced a reoccurrence of the right buccal carcinoma, which Dr. Adams surgically excised. Tuttle underwent additional radiation therapy,

---

[2]Inflamation of the parotid gland, the largest of the salivary glands in humans located in front of or below the ear.

3

and was referred by Dr. Adams to an oncologist, Dr. Dorothy Uhlman (Dr. Uhlman). In a follow-up letter to Dr. Adams, Dr. Uhlman noted:

> [Tuttle's] head and neck cancer dates back to October 1993 when he first noticed a lesion on the right buccal mucosa. He had a small lesion which he had ignored for several months. When it became infected, he sought medical attention and it was biopsied. [Tuttle] then states that over a period of 5 weeks the lesion grew very rapidly to the point that when it was finally resected it was a large penetrating tumor growing out through the skin.

Tuttle survived oral cancer for nearly five years. However, he eventually succumbed to complications related to his cancer and died on July 27, 1998.

### B. Procedural Summary

On September 21, 1999, Mrs. Tuttle filed this lawsuit. After extensive pleadings and amendments thereto, Mrs. Tuttle filed a Second Amended Complaint against Lorillard Tobacco Company (Lorillard), National Tobacco Company (National), Pinkerton Tobacco Company[3] (Pinkerton), and the Smokeless Tobacco Council (STC), a trade association whose members are smokeless tobacco manufacturers, including Pinkerton and National. Lorillard was not a member of the STC, but did make several monetary contributions to the STC. Mrs. Tuttle alleged both common law tort claims (negligence, fraud, and conspiracy), as well as statutory violations of Minnesota's Unlawful Trade Practices Act, Deceptive Trade Practices Act, Consumer Fraud Act, and False Advertising Act.

During his deposition, Dr. Adams testified he wrote "5½ years" on Tuttle's death certificate as the time period for the interval between the onset of Tuttle's disease and his death. Dr. Adams testified he understood the death certificate inquiry

---

[3]Pinkerton manufactures a smokeless tobacco called "Red Man," which Tuttle occasionally chewed when he could not obtain Beech-Nut.

to mean "from the time of the diagnosis to the time he died," and confirmed that 5½ years from July 1998, when Tuttle died, would correspond to the beginning of 1993. In the same deposition Dr. Adams also testified:

> I think the problem is that Mr. Tuttle, for whatever reason, was convinced that this whole thing was an infection, it was on the opposite side and therefore it was an infection, and even the first doctor, the first doctor he saw, must have thought it was an infection, so that there was a delay in the recognition of the problem, delay in diagnosis there that we wished we had not had.

Following extensive discovery, the defendant smokeless tobacco manufacturers and the STC moved for summary judgment on all claims.[4] The district court granted summary judgment and dismissed with prejudice all of Mrs. Tuttle's claims. Upon review of all the evidence, the district court succinctly concluded:

> Pinkerton's separate Motion is granted in its entirety because there is no evidence that Pinkerton's product was a substantial cause of Mr. Tuttle's injuries. Likewise, Lorillard's separate Motion is granted because there is no evidence that the allegedly fraudulent statements made by STC can be attributed to Lorillard. STC's separate Motion is granted in part because there is no evidence that STC had a duty to Mr. Tuttle. National's separate Motion is denied to the extent that National challenges whether its product caused Mr. Tuttle's injury.

> Plaintiff's negligence, common-law fraud, conspiracy, and Unlawful Trade Practices Act claims were brought outside the statute of limitations and must be dismissed. Plaintiff's Consumer Fraud Act and False Advertising Act claims fail because Plaintiff's lawsuit will not benefit the public. Alternatively, all of Plaintiff's fraud claims, both

---

[4]The district court dismissed Mrs. Tuttle's Deceptive Trade Practices Act claim before the defendants moved for summary judgment. Mrs. Tuttle does not appeal the dismissal of this claim.

common-law and statutory, fail because Plaintiff cannot show the essential element of reliance, and because her conspiracy claim depends on her fraud claim, the conspiracy claim likewise fails. The Court therefore dismisses all of Plaintiff's claims with prejudice.

Mrs. Tuttle raises five issues on appeal, contending the district court erred in concluding: (1) the statute of limitations had expired on certain counts; (2) her Consumer Fraud Act and False Advertising Act claims served no public purpose; (3) the STC did not assume a duty to Tuttle and other smokeless tobacco users; (4) the record lacked proof of reliance to substantiate her fraud and conspiracy claims; and (5) the STC neither spoke nor acted on Lorillard's behalf.

## II. DISCUSSION

### A. Statute of Limitations

All parties agree the applicable statute of limitations for the common law negligence, fraud and conspiracy claims is governed by Minn. Stat. section 541.05, subd. 1(5)-(6), providing that actions for personal injury and fraud must be brought within six years from the date of accrual. Before a cause of action can accrue in cases involving injury caused by defective products, the Minnesota discovery rule requires a showing of two elements: "(1) a cognizable physical manifestation of the disease or injury, and (2) evidence of a causal connection between the injury or disease and the defendant's product, act, or omission." Hildebrandt v. Allied Corp., 839 F.2d 396, 398 (8th Cir. 1987) (interpreting Minnesota law). Concluding the evidence compels the conclusion that Tuttle was aware of the lump in his cheek before September 21, 1993, the district court held the plaintiff's negligence, common law fraud, conspiracy, and Unlawful Trade Practices Act claims were not timely filed and must be dismissed.

In Hildebrandt, we reversed a district court's limitations ruling, concluding genuine issues of material fact existed whether the "plaintiffs had knowledge of the

6

cause of their medical problems at the time found by the district court." Id. at 399. The court declared:

> We do not believe Minnesota's applicable statutes of limitation were intended to provoke the premature commencement of claims for temporary sickness or discomfort. Rather the *plaintiffs are entitled to wait until the cause has been rationally identified*.

Id. (emphasis added). Five years later, in Klempka v. G.D. Searle & Co., 963 F.2d 168 (8th Cir. 1992), we affirmed summary judgment where the undisputed evidence established the plaintiff clearly knew she had pelvic inflamation disease and "the injuries were, *in her physician's opinion,* caused by the [intrauterine device]." Id. at 170 (emphasis added).

In this case, Mrs. Tuttle presented evidence that both Tuttle and Dr. Regan, the first physician to examine Tuttle, believed the lesion inside Tuttle's mouth was caused by oral infection and was treatable with antibiotics. The second treating physician, Dr. Koutroupas, noted his first impression was "an infected tumor." Dr. Adams' deposition testimony further substantiates their beliefs. We, therefore, cannot say the evidence of "causal connection" before September 21, 1993, is so clear that the limitations' determination can be made as a matter of law. Mindful that we must view all evidence in the light most favorable to the nonmovant and draw all reasonable inferences in her favor, we conclude the limitations issue is for the jury to determine. See Karjala v. Johns-Manville Prods. Corp., 523 F.2d 155, 160-61 (8th Cir. 1975).

### B.    Common Law Claims
#### 1.    Negligence Claims

Having concluded the statute of limitations issue cannot be decided as a matter of law, we proceed to review the legal sufficiency of the common law claims. The

district court noted in its Memorandum and Order that Mrs. Tuttle had conceded to the dismissal of her negligent manufacture claim, including her claims of failure to properly package, maintain, prepare for use, and compound. Thus, the remaining claims against the smokeless tobacco manufacturers and the STC in Count I of the Second Amended Complaint allege negligent misrepresentation and negligent failure to warn.

### a. Negligent Misrepresentation

Mrs. Tuttle alleges Lorillard and thirteen other tobacco manufacturers negligently misrepresented their so-called "Frank Statement," which was published in more than 300 newspapers in January 1954. The "Frank Statement," in part, declared:

> We accept an interest in people's health as a basic responsibility, paramount to every other consideration in our business. We believe the products we make are not injurious to health. We always have and always will cooperate closely with those whose task it is to safeguard the public health . . . . We are pledging aid and assistance to the research effort into all phases of tobacco use and health. This joint financial aid will of course be in addition to what is already being contributed by individual companies. . . . This statement is being issued because we believe the people are entitled to know where we stand on this matter and what we intend to do about it.

Mrs. Tuttle also alleges the STC, as the agent of the smokeless tobacco industry, negligently misrepresented the addictive and injurious effects of using smokeless tobacco.

In <u>Smith v. Brutger Cos.</u>, 569 N.W.2d 408, 413 (Minn. 1997), the Minnesota Supreme Court identified the elements of the tort of negligent misrepresentation involving the risk of physical harm as being: "(1) a duty of reasonable care in conveying information; (2) breach of that duty by negligently giving false

information; (3) reasonable reliance on the misrepresentations, which reliance is the proximate cause of physical injury; and (4) damages." Without foreclosing the future possibility of recognizing the tort of negligent misrepresentation involving risk of physical harm, the Minnesota Supreme Court in Smith declined to recognize the tort based on the facts of the case, concluding the plaintiffs could not prove a causal connection between the alleged misrepresentations and the injury sustained, nor could the plaintiffs prove reasonable reliance on the alleged misrepresentations. Id. at 414. Mrs. Tuttle's negligent misrepresentation claims against the smokeless tobacco manufacturers and the STC fail as a matter of law because Mrs. Tuttle similarly cannot prove Tuttle read and relied upon the alleged misrepresentations. Assuming the smokeless tobacco manufacturers' "Frank Statement" and the STC's statements contain material misrepresentations, the fact that these statements were widely published in the media during the nearly forty years Tuttle used smokeless tobacco does not prove Tuttle actually read the alleged misrepresentations and relied upon the misrepresentations in continuing to use smokeless tobacco.

Mrs. Tuttle filed this lawsuit after Tuttle died. The record on appeal contains no admissible evidence identifying what statements attributable to any of the defendants Tuttle actually read and actually relied upon to support his belief that using smokeless tobacco did not endanger his health. In her affidavit prepared in opposition to summary judgment, Mrs. Tuttle attests that, before his cancer diagnosis and death, Tuttle told her (1) "they say in the papers that chewing is safe," (2) "he thought smoking was dangerous but had read that smokeless tobacco wasn't," (3)"he felt he had been deceived by the tobacco companies' claims that spit tobacco doesn't do anybody any harm and that it was a safe thing to do instead of smoking" and (4) "if somebody would have told me in the early years what could happen I wouldn't have ever started chewing and I would have tried to stop."

Mrs. Tuttle cannot rely on hearsay to avoid summary judgment. See Mays v. Rhodes, 255 F.3d 644, 648 (8th Cir. 2001) (finding the unsworn statements in

9

question were hearsay, and not cognizable on summary judgment motion); Rademacher v. FMC Corp., 431 N.W.2d 879, 881 (Minn. Ct. App. 1988). In ruling on a motion for summary judgment, "[t]he district court must base its determination regarding the presence or absence of a material issue of factual dispute on evidence that will be admissible at trial." Firemen's Fund Ins. Co. v. Thien, 8 F.3d 1307, 1310 (8th Cir. 1993); Bersch v. Rgnonti & Assocs., Inc., 584 N.W.2d 783, 788 (Minn. Ct. App. 1998) (declaring "[a] district court must disregard inadmissible hearsay evidence on a motion for summary judgment").

Aside from being inadmissible hearsay, Tuttle's purported statements are exceptionally vague and conclusory. Tuttle's statements fail to identify any misrepresentation he actually read and relied upon in using smokeless tobacco. Tuttle's unsworn statements also fail to identify any party or parties responsible for making the misrepresentation on which he allegedly relied. In her attempt to defeat summary judgment, Mrs. Tuttle fails to lay the most basic foundation blocks for establishing any reasonable reliance, and her affidavit fails to raise a genuine issue of material fact on the crucial issue of reasonable reliance. Therefore, Mrs. Tuttle's claims for negligent misrepresentation resulting in physical harm must be dismissed. See Smith, 569 N.W.2d at 414.

### b.      Negligent Failure to Warn

Count I of the Second Amended Complaint also alleges the smokeless tobacco manufacturers and the STC failed to warn Tuttle and the public of the dangerous properties and addictive nature of smokeless tobacco. Based on the record before us, Mrs. Tuttle does not appear to have conceded the dismissal of her negligent failure to warn claims, which are neither barred by the statute of limitations, nor are they preempted by the Comprehensive Smokeless Tobacco Health Education Act of 1986 (Smokeless Tobacco Act), 15 U.S.C. §§ 4401-4408 (2000). The Act's savings clause expressly preserves state tort liability by providing, "[n]othing in this chapter shall

relieve any person from liability at common law or under State statutory law to any other person." Id. § 4406(c).

To establish a negligent failure to warn claim under Minnesota law, a plaintiff must show: (1) the defendants had reason to know of the dangers of using the product; (2) "the warnings fell short of those reasonably required," breaching the duty of care; and (3) the lack of an adequate warning caused the plaintiff's injuries. Erickson v. Am. Honda Motor Co., 455 N.W.2d 74, 77-78 (Minn. Ct. App. 1990). Whether a duty to warn exists is a question of law. Germann v. F. L. Smithe Mach. Co., 395 N.W.2d 922, 924 (Minn. 1986). Assuming, without deciding, the defendants had reason to know of the dangerous properties and addictive nature of smokeless tobacco, had a legal duty to warn Tuttle and consumers at large, and breached their duty by failing to provide adequate product warnings, the record on appeal fails to establish a direct causal nexus between a failure to warn and the injury sustained. Where the undisputed facts demonstrate a lack of causation between the failure to warn and the injury sustained, the Minnesota Supreme Court has held that the issue of causation may be decided as a matter of law. Balder v. Haley, 399 N.W.2d 77, 81 (Minn. 1987).

Proximate cause focuses on the individual product user and requires some admissible evidence the product user would have acted differently had the manufacturers provided adequate warnings. See Erickson, 455 N.W.2d at 78 (ruling product users' testimony that "if they had been made aware of the dangers of improper ATV use, they would not have allowed [ ] children to operate the vehicle or to be passengers" is sufficient evidence that failure to warn caused injury); Krein v. Raudabough, 406 N.W.2d 315, 320 (Minn. Ct. App. 1987) (declaring "the . . . failure to warn must be the proximate cause of the plaintiff's injury," and affirming refusal to instruct jury on failure to warn, because the product user presented "no evidence at trial that he would have acted differently had GMC provided a warning" and adduced "no evidence which would reasonably tend to prove that GMC's failure

11

to warn . . . proximately caused [product users'] injuries"). To establish the prima facie element of proximate cause, Mrs. Tuttle must present some affirmative evidence Tuttle would have refrained from using smokeless tobacco had the defendants provided adequate product warnings. The record on appeal contains a *Reader's Digest* article published in October 1996 that records Tuttle telling baseball players, "When I started [using smokeless tobacco], no one told me it was harmful . . . I thought [smokeless tobacco] was a safe substance for the 38 years I used it." In her affidavit, Mrs. Tuttle attests that after his oral cancer diagnosis Tuttle told her, "if somebody would have told me in the early years what could happen I wouldn't have ever started chewing and I would have tried to stop." As discussed above, Tuttle's unsworn, out-of-court statements are inadmissible hearsay and cannot be considered as evidence of proximate cause.

Importantly, the Minnesota state courts have not adopted the so-called "heeding presumption"[5] within the context of a failure to warn claim. See Kallio v. Ford Motor Co., 407 N.W.2d 92, 99-100 (Minn. 1987) (sustaining failure to warn verdict "[w]ithout deciding whether a rebuttable presumption exists that a warning would have been heeded"). We recognize application of the heeding presumption would be particularly beneficial in this case, where Tuttle died before testifying under oath that he would have read and heeded warnings had they been provided by the

---

[5]In products liability law, a majority of jurisdictions recognize a rebuttable presumption that if a product comes with a warning, the user will read and heed the warning. See Boerner v. Brown & Williamson Tobacco Corp., 260 F.3d 837, 842-845 (8th Cir. 2001) (discussing presumption as applied under Arkansas, Louisiana, New York, Iowa and New Jersey common law). When applied, the presumption operates to the benefit of the manufacturer where adequate warnings are provided because the manufacturer receives the benefit of the doubt that the warning provided is effective in alerting the user of the product's potential danger. Where no warning is given, the presumption operates in favor of the user by presuming the user would have read, understood, and heeded the warning. Id. at 842. The practical effect of the presumption is to relieve a plaintiff of the burden of proving proximate cause.

smokeless tobacco manufacturers and their trade association. However, based on the evidentiary record submitted and the status of the law in Minnesota, we do not believe the Minnesota state courts would adopt the rebuttable presumption in this case. Accordingly, we must conclude Mrs. Tuttle's negligent failure to warn claims fail for want of admissible proof of proximate causation.[6]

## 2. Fraud and Conspiracy Claims

In Counts Two and Eight of the Second Amended Complaint, Mrs. Tuttle alleges the smokeless tobacco manufacturers and the STC committed fraud and civil conspiracy. While the district court dismissed these claims as being barred by the statute of limitations, the court ruled alternatively that Mrs. Tuttle had failed to establish the prima facie element of reliance. Our review of the record convinces us no proof of reliance was presented, and reliance cannot be presumed in this case. See Berg v. Berg, 275 N.W. 836, 840 (Minn. 1937) (declaring "fraud and undue influence must be proved. Neither is presumed."); Norwest Bank Midland v. Shinnick, 402 N.W.2d 818, 825 (Minn. App. 1987) (ruling "presumption of reliance is limited to cases involving primarily omissions"); see also Austin v. Loftsgaarden, 675 F.2d 168, 178 n.21 (8th Cir. 1982) (explaining "this circuit's view [is] that the presumption of reliance is limited to cases involving primarily omissions"). Because the common law fraud claim is legally insufficient for want of proof that Tuttle relied on the smokeless tobacco manufacturers' and the STC's representations, we agree with the district court's ruling that the civil conspiracy claim, which depends on a viable underlying tort, must fail as well. Harding v. Ohio Cas. Ins. Co., 41 N.W.2d 818, 824 (Minn. 1950) (declaring "[t]he gist of the action is not the conspiracy charged, but the tort working damage to the plaintiff") (citation omitted); D.A.B. v. Brown, 570

---

[6]By February 1987, the Smokeless Tobacco Act required smokeless tobacco warnings in advertising and on packaging. 15 U.S.C. § 4402(a). Tuttle continued to use smokeless tobacco until 1993, which undercuts any "heeding presumption" and any reasonable reliance arguments.

N.W.2d 168, 172 (Minn. Ct. App. 1997) (holding "conspiracy count fails because it is not supported by an underlying tort").

### C. Statutory Claims

Mrs. Tuttle further alleges in the Second Amended Complaint violations of the Minnesota Prevention of Consumer Fraud Act, Minn. Stat. § 325F.68-70 (2000) (Count III), Minnesota Unlawful Trade Practices Act, Minn. Stat. § 325D.09-16 (2000) (Count IV); and Minnesota False Statement in Advertising Act, Minn. Stat. § 325F.67 (2000) (Count VII). These statutory claims are governed by the same six-year statute of limitations discussed above in Section IIA. See Minn. Stat. § 541.05, subd. 1(2). However, "[t]his provision does not include a discovery allowance as does the statute of limitations applicable to fraud claims." Klehr v. A.O. Smith Corp., 875 F. Supp. 1342, 1352 (D. Minn. 1995) (citing Minn. Stat. § 541.05 subd. 1(2)), aff'd, 87 F.3d 231 (8th Cir. 1996), aff'd, 521 U.S. 179 (1997). Therefore, the six-year limitations period commenced on the dates of sale, when the alleged violations of these consumer statutes occurred. See id. at 1352-53. We agree with the district court that the consumer protection claims depend on the purchase of a product within the applicable six-year limitations period, and Mrs. Tuttle's statutory claims are untimely.

Even if the claims were timely filed and Mrs. Tuttle had standing to recover damages under Minn. Stat. § 8.31, subd. 3a (private attorney general statute) in a wrongful death action, we conclude her statutory claims fail for want of proof of a causal nexus between the defendants' conduct and Tuttle's injuries. In Group Health Plan, Inc. v. Philip Morris Inc., 621 N.W.2d 2, 11(Minn. 2001), the Minnesota Supreme Court addressed the certified question "whether a plaintiff must plead and prove reliance on the defendants' alleged misrepresentations in order to recover damages under Minn. Stat. § 8.31, subd. 3a, for violation of Minn. Stat. §§ 325F.67, 325F.69, subd. 1, or 325D.13." The court concluded"to prove their claims for damages under the misrepresentation in sales statutes, the [plaintiffs] must establish

14

a causal nexus between their alleged damages and the conduct of the defendants alleged to violate the statutes." Id. at 15. In explaining the causal requirement, the court stated the plaintiffs (Health Maintenance Organizations) "must demonstrate the defendants' conduct had some impact on their members' use of tobacco products that caused their damages." Id. at 14. The court further explained:

> [I]n cases such as this, where the plaintiffs' damages are alleged to be caused by a lengthy course of prohibited conduct that affected a large number of consumers, the showing of reliance that must be made to prove a causal nexus need not include direct evidence of reliance by individual consumers of defendants' products. Rather, the causal nexus and its reliance component may be established by other direct or circumstantial evidence that the district court determines is relevant and probative as to the relationship between the claimed damages and the alleged prohibited conduct.

Id.

While the court declined to answer in detail what manner of proof would suffice to establish the causal nexus between the claimed damages and defendants' conduct, id. at 15, the court suggested the Lanham Act, 15 U.S.C. § 1125(a), may provide some guidance on the nature of proof required, and cited, as examples, consumer testimony and circumstantial evidence, including consumer surveys, consumer reaction tests, and market research. Id. at 14 n.9 & 15 n.11. Causation may also be established by expert testimony. See Group Health Plan, Inc. v. Philip Morris USA, Inc., 344 F.3d 753, 757-58 (8th Cir. 2003). Although Mrs. Tuttle need not present direct evidence of Tuttle's individual reliance, Mrs. Tuttle must establish some proof that the conduct of the smokeless tobacco manufacturers and the STC in failing to warn caused consumers to continue using smokeless tobacco and to sustain physical injury in reliance on the defendants' conduct. The Minnesota Court of Appeals has ruled for a plaintiff "to prove causation, a necessary element of her statutory consumer fraud claims, she must at least present circumstantial evidence of

15

some reliance on [defendants']alleged misrepresentations." <u>Flynn v. Am. Home Prods. Corp.</u>, 627 N.W.2d 342, 351 (Minn. Ct. App. 2001). Because Mrs. Tuttle failed to present any admissible evidence of reliance, we affirm the district court's dismissal of the consumer protection claims.

## III.  CONCLUSION

For the foregoing reasons, we affirm the district court's judgment in favor of the defendants.

_____