Opinion
KREMER, P. J.
M.B. appeals a summary judgment in favor of the City of San Diego (City) on her complaint for damages relating to a rape due to police negligence in investigating the case and giving advice. On appeal, M.B. contends actions by the police created a special relationship and a basis for liability. She also seeks permission to amend her complaint to include a cause of action based on negligent misrepresentations by the police officers who handled her case. We affirm.
Facts
In late August 1987, M.B. hired a roofing company to replace shingles on her roof. One of the employees was Frank Johnson who used M.B.’s bathroom while on duty in September 1987. Sometime in late September, M.B. noticed lingerie missing from her home. The bathroom which Johnson had used connected to a dressing room where M.B. had some lingerie.
On October 2, someone entered M.B.’s bedroom window while she was sleeping and stole some of her underwear. She called the police. Officer Clark responded. M.B. told Clark she suspected one of the roofing employees whom she knew only as “Frank” had committed the burglary. Officer Clark suggested she acquire a stun gun or mace to protect herself but M.B. declined to do so because her two-year-old son lived with her. The police were aware she was taking the precaution of changing her locks because the locksmith was working on the locks while an officer was present. The police detectives involved in the investigation told her “not to worry,” that “these guys never come back.”
After the burglary, Johnson began making obscene phone calls to M.B.. He told M.B. he was the one who had broken into her house and said he was going to return. M.B. contacted the police. When she told them he had said he was going to come over to her house, Detective Torgesen told her “they *441 never do.” The detective also asked if she would like him “to get a squad car to come by and check on you?” M.B. said “yes.” She waited until 4 a.m. but no squad car arrived. On October 28, a telephone trap was placed on her phone.
Two days later, Johnson returned to M.B.’s home and raped her. Before the rape had occurred, M.B. had contemplated putting in a burglar alarm system, moving to the home of a friend or sending her son to live with his father but did not do so because of the reassurances of the officers.
M.B. sued the City, among others, alleging the City’s police officers were negligent in investigating her case and in assuring “such perpetrators never return and need not be feared.” She stated she reasonably relied on the investigation and assurances of the police and as a result she failed to “take precautions for her safety that she otherwise would have taken,” was injured and incurred damages.
The City moved for a summary judgment on the basis it had no liability because no “special relationship” existed between the officers and M.B. The trial court agreed and granted summary judgment to the City.
Discussion
I

Summary Judgment Standard

The summary judgment procedure aims to discover whether there is evidence requiring the fact-weighing procedures of a trial. (Decker v. City of Imperial Beach (1989) 209 Cal.App.3d 349 [257 Cal.Rptr. 356].) “[T]he trial court in ruling on a motion for summary judgment is merely to determine whether such issues of fact exist, and not to decide the merits of the issues themselves.” (Molko v. Holy Spirit Assn. (1988) 46 Cal.3d 1092, 1107 [252 Cal.Rptr. 122, 762 P.2d 46], cert. den. 490 U.S. 1084 [104 L.Ed.2d 670, 109 S.Ct. 2110].) The trial court decides whether triable issues exist by examining the affidavits and evidence before the court, including any reasonable inference which may be drawn from the facts presented. (Gootee v. Lightner (1990) 224 Cal.App.3d 587, 591 [274 Cal.Rptr. 697].)
In reviewing the propriety of a summary judgment, the appellate court must resolve all doubts in favor of the party opposing the judgment. (Palma v. U.S. Industrial Fasteners, Inc. (1984) 36 Cal.3d 171, 183 [203 Cal.Rptr. 626, 681 P.2d 893].) The reviewing court conducts a de novo examination to see whether there are any genuine issues of material fact or *442 whether the moving party is entitled to summary judgment as a matter of law. (Lichty v. Sickels (1983) 149 Cal.App.3d 696, 699 [197 Cal.Rptr. 137].) While “[s]ummary judgment is a drastic procedure, should be used with caution [citation] and should be granted only if there is no issue of triable fact” (Brose v. Union-Tribune Publishing Co. (1986) 183 Cal.App.3d 1079, 1081 [228 Cal.Rptr. 620]), it is also true “[j]ustice requires that a defendant be as much entitled to be rid of an unmeritorious lawsuit as a plaintiff is entitled to maintain a good one.” (Larsen v. Johannes (1970) 7 Cal.App.3d 491, 507 [86 Cal.Rptr. 744].) “A defendant is entitled to summary judgment if the record establishes as a matter of law that none of the plaintiff’s asserted causes of action can prevail. [Citation.]” (Molko v. Holy Spirit Assn., supra, 46 Cal.3d at p. 1107.)
II

Special Relationship

As a general rule, the law does not impose liability on a person for his failure to control the conduct of a third person. (Marois v. Royal Investigation & Patrol, Inc. (1984) 162 Cal.App.3d 193, 199 [208 Cal.Rptr. 384].) “A person who has not created a peril is not liable in tort merely for failure to take affirmative action to assist or protect another unless there is some [special] relationship between them which gives rise to a duty to act. [Citation.]” (Williams v. State of California (1983) 34 Cal.3d 18, 23 [192 Cal.Rptr. 233, 664 P.2d 137].)
We explained in Lopez v. City of San Diego (1987) 190 Cal.App.3d 678, 681 [235 Cal.Rptr. 583]:
“Where the gravamen of the complaint is a police failure to act reasonably in protecting members of the public from the harm caused by a third person (i.e., nonfeasance), a series of recent Supreme Court cases make clear that the liability of the governmental entity is narrowly circumscribed. [Citations.] Generally, there is no legal ‘duty,’ and hence no liability for negligence, unless there is a special relationship between the police and either the victim or the third person which gives rise to a responsibility to control the third person’s conduct. [Citations.] In the usual situations involving the performance of police duties, such a relationship has been held to depend on representations or conduct by the police which cause the victim(s) to detrimentally rely on the police such that the risk of harm as the result of police negligence is something more than that to which the victim was already exposed. [Citations.]”
A special relationship between the police and an individual has been found in a few narrow circumstances where the police made specific promises to *443 undertake a particular action and failed to do so (see Morgan v. County of Yuba (1964) 230 Cal.App.2d 938 [41 Cal.Rptr. 508]), where the police created or increased a peril by affirmative acts (McCorkle v. City of Los Angeles (1969) 70 Cal.2d 252 [74 Cal.Rptr. 389,449 P.2d 453]) or where the police voluntarily undertook to aid an individual, took affirmative steps to aid the individual and by the acts lulled the individual into a false sense of security (Mann v. State of California (1977) 70 Cal.App.3d 773 [139 Cal.Rptr. 82]).
Courts have refused to find a special relationship or impose liability based on the negligence by police personnel in responding to requests for assistance,[1] in conducting or failing to conduct an investigation,[2] in failing to warn of a potential danger[3] or in failing to provide sufficient protection where the police have not induced reliance on a specific promise that they would provide specific protection.[4]
*444 M.B. argues summary judgment was improper because there existed a special relationship between herself and the officers. She asserts the officers’ actions “increased the peril of the plaintiff as a result of reliance by the plaintiff.” The facts offered by M.B., however, do not show any special relationship existed between herself and the police or that the officers increased any peril. The police made neither special promises to protect her nor took affirmative steps to provide her with special protection. The police did not do anything which increased her peril. Nothing that they did made it more likely Johnson would return or harm her, e.g., they did not increase Johnson’s ability or encourage him to return or harm her nor did they increase her vulnerability. Rather, the essence of M.B.’s complaint is that the police failed to take affirmative acts—failed to adequately investigate, to uncover Johnson’s prior record, to warn her Johnson might return. These failures by the police did not increase the risk Johnson would decide to return to her house and harm her; they merely failed to decrease the risk. The police actions resulted in maintaining the status quo.
During oral argument, M.B. argued a special relationship existed between herself and the police based on Detective Torgesen’s promise after the burglary to send a patrol car to check on her. She argues the detective’s promise shows the police voluntarily assuming a special protective role. Initially, we note she was the one who called the police and the offer to send a patrol car was in response to her request. Case law does not support the creation of a special relationship based solely on police response to a citizen call for assistance; such responses are basic to police work and not “special” to a particular individual. Second, even if we assumed the detective’s offer to send a patrol car amounted to the voluntary assumption of a special protective role by the police towards M.B., that role was limited to protecting her that night by sending the patrol car. Any negligence by the police in failing to send a patrol car that night did not result in the harm which occurred; the rape did not occur until two days later.
We conclude summary judgment was properly granted on the basis no special relationship existed between M.B. and the police.
Ill

Negligent Misrepresentation

Alternatively, M.B. seeks to recover based on a theory of negligent misrepresentation as outlined by the Supreme Court in the recent case of Garcia v. Superior Court (1990) 50 Cal.3d 728 [268 Cal.Rptr. 779, 789 P.2d 960]. She states: “As in Garcia, plaintiff [M.B.] is willing and requests the *445 opportunity to amend her complaint to state a cause of action against the City of San Diego for negligent misrepresentation.”
Initially, we observe Garcia was a demurrer case where the Supreme Court held the trial court abused its discretion in not allowing the plaintiff leave to amend. This case, in contrast, reviews a summary judgment. Generally, once judgment has been rendered, a plaintiff cannot amend a complaint unless the judgment is first vacated or a motion for a new trial is granted (Young v. Berry Equipment Rentals, Inc. (1976) 55 Cal.App.3d 35, 38 [127 Cal.Rptr. 200]; 5 Witkin, Cal. Procedure (3d ed. 1985) Pleading, § 1135, p. 550). As judgment has not here been set aside, the relief appellant seeks is unavailable.
Assuming arguendo these procedural obstacles to amending the complaint could be surmounted, we do not believe reversal is warranted. M.B. does not propose any new facts; she seeks only to state a new legal theory, i.e., negligent misrepresentation as outlined in the Garcia case. The facts of this case do not, however, support recovery under Garcia.
In Garcia, the complaint alleged a parole officer made negligent misrepresentations to the plaintiffs’ mother, telling her not to worry about a parolee—that he was not coming looking for her. The parole officer made these representations despite the fact the parolee, a convicted murderer and the mother’s former boyfriend, had told the parole officer he would kill the mother if he found her, the parole officer believed the parolee was dangerous and had him placed in 72 hours custody for psychiatric observation, the parole officer had ordered the parolee upon release from the psychiatric observation to get further treatment and the parole officer had told the mother’s attorney that the parolee was very jealous and dangerous and that the parole officer would serve a restraining order on the parolee and have him arrested. The parolee eventually kidnapped and killed the mother.
In Garcia, the trial court sustained a demurrer without leave to amend to the plaintiffs’ complaint because the plaintiffs had not shown there was a special relationship between the parole officer and either the mother or the parolee. The Supreme Court, however, held it was not necessary to establish a special relationship:
“A special relationship is a prerequisite for liability based on a defendant’s failure to act. [Citations.] In contrast, plaintiffs in this case assert that [the parole officer] is liable because his allegedly negligent representations about [the mother’s] physical safety induced her to be less careful. Accordingly, it is unnecessary to look beyond the ordinary rules that determine when *446 misrepresentations are actionable.” (Garcia v. Superior Court, supra, 50 Cal.3d at p. 734, fn. omitted.)
To establish a cause of action for negligent misrepresentation involving a risk of physical harm under Garcia, M.B. must show (1) the police had a duty to exercise reasonable care in giving her information about Johnson; (2) the police gave her false information with a degree of culpability at least equal to negligence; (3) M.B. actually and reasonably relied on the alleged misrepresentations; and (4) her reliance proximately caused the harm. (Garcia v. Superior Court, supra, 50 Cal.3d 728, 735-737; Weissich v. County of Marin (1990) 224 Cal.App.3d 1069,1081 [274 Cal.Rptr. 342].) We conclude the facts presented here do not show actionable negligent misrepresentation by the police.
Even assuming for the sake of argument that the police had a duty to exercise reasonable care in giving her information about the suspect, M.B.’s allegations and affidavits when viewed as a whole do not show circumstances supporting a cause of action under Garcia. M.B. argues:
“In the instant matter, as in Garcia, plaintiff was assured that Johnson was not going to come looking for her. She was told by police detectives Dosh and Armstrong ‘not to worry’ because the type of individual making the threatening phone calls do not return to the scene. She was told by detective Torgesen that the caller would not follow up on his threat because ‘they never do.’ Plaintiff has established that a question of fact exists as to whether the police detectives were negligent through their failure to exercise reasonable care in the manner in which they communicated the information to her. Furthermore, a question would also appear to exist in their failure to ascertain the accuracy of the information conveyed to plaintiff.”
Here, the officers were not making representations about what Johnson, in particular, might do based on any special knowledge they had about him. Rather, the record shows the officers gave only generalized reassurances. Nothing in the record indicates the generalized reassurances were false, i.e., that generally perpetrators of this type do not return to the scene or are not dangerous. Nor does the fact the detectives coupled these generalized representations with advice as to precautionary measures M.B. might take (e.g., obtaining mace or a stun gun) mean M.B. has stated a cause of action for negligent misrepresentation under Garcia. The advice was generic advice applicable to crime victims generally. M.B., on her own, took precautionary actions, including changing the locks; she did not merely rely on the police representations the perpetrator would not return.
*447 We conclude the facts do not state a cause of action under Garcia.[5]
Disposition
The judgment is affirmed.
Work, J., and Benke, J., concurred.

See, for example, Hartzler v. City of San Jose (1975) 46 Cal.App.3d 6 [120 Cal.Rptr. 5] (no liability for police delay in responding to call for assistance); Antique Arts Corp. v. City of Torrance (1974) 39 Cal.App.3d 588 [114 Cal.Rptr. 332] (no liability for negligence by dispatcher for delay in broadcasting report of burglary); and Sullivan v. City of Sacramento (1987) 190 Cal.App.3d 1070 [235 Cal.Rptr. 844] (no liability for dispatcher’s negligence).

See, for example, Williams v. State of California, supra, 34 Cal.3d 18 (no liability for negligence in investigating vehicular accident); Rose v. County of Plumas (1984) 152 Cal.App.3d 999 [199 Cal.Rptr. 842] (no liability for officers who investigated disturbance at bar, discovered plaintiff was injured and bleeding but failed to arrange for emergency treatment to the plaintiff’s detriment); Von Batsch v. American Dist. Telegraph Co. (1985) 175 Cal.App.3d 1111, 1124 [222 Cal.Rptr. 239] (no liability for negligence in investigating a burglary alarm and failing to discover burglar inside premises who eventually killed businessmen who worked on premises: “The officers did not create the peril to decedent. They took no affirmative action which contributed to, increased, or changed the risk which would have otherwise existed. At most they merely failed to eliminate the danger of unknown intruders.”); Searcy v. Hemet Unified School Dist. (1986) 177 Cal.App.3d 792 [223 Cal.Rptr. 206] (no liability for California Highway Patrol negligence in failing to inspect, report or correct alleged dangerous road conditions along route to and from school).

See, for example, Tarasoff v. Regents of University of California (1976) 17 Cal.3d 425 [131 Cal.Rptr. 14, 551 P.2d 334, 83 A.L.R.3d 1166] (no special relationship existed requiring officers to warn victim of threat to life); Martinez v. State of California (1978) 85 Cal.App.3d 430 [149 Cal.Rptr. 519], affd. (1980) 444 U.S. 277 [62 L.Ed.2d 481, 100 S.Ct. 553] (no liability existed requiring individual be warned of potential assault by dangerous prisoner being released from custody where no special relationship between victim and state existed). But see Morgan v. County of Yuba, supra, 230 Cal.App.2d 938 (liability imposed because police officer had made a specific promise to an individual to tell her when prisoner was going to be released).

See, for example, Stone v. State of California (1980) 106 Cal.App.3d 924 [165 Cal.Rptr. 339] (no liability for failure to provide adequate security protection at state fair); Mikialian v. City of Los Angeles (1978) 79 Cal.App.3d 150 [144 Cal.Rptr. 794] (no liability for failure to take precautions to protect plaintiff tow truck driver by, e.g., putting out flares); City of Sunnyvale v. Superior Court (1988) 203 Cal.App.3d 839 [250 Cal.Rptr. 214] (no liability for *444 failure to arrest drunk driver or to warn of danger in being passenger in car where driver is drunk).

To the extent M.B.’s arguments rest on the police failure to uncover Johnson’s criminal record or other suspicious conduct, we note (1) she has not explicitly raised this issue on appeal and (2), as we have previously explained, the police are not liable for negligently conducting an investigation unless a special relationship exists between the police and the individual.