Filed 3/5/14  Ti v. San Francisco Bay Area Rapid Trans. Dist. CA1/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| YANG TI et al.,<br><br>      Plaintiffs and Appellants,<br><br>v.<br><br>SAN FRANCISCO BAY AREA RAPID TRANSIT DISTRICT,<br><br>      Defendant and Respondent. | A136954<br><br>(Alameda County<br>Super. Ct. No. HG11575852) |

Yang Ti and her husband, Pat Diao, sued the San Francisco Bay Area Rapid Transit District (BART) for injuries Ti allegedly sustained when the doors of a BART train closed on her as she attempted to board.[1]  Her complaint for premises liability alleged that BART was liable under theories of general negligence and maintaining a dangerous condition on public property.  The trial court granted summary judgment, ruling that Ti failed to present sufficient evidence from which a reasonable jury could find either that the train operator was negligent or that the condition of the train doors constituted a dangerous condition of public property that presented a substantial risk of injury to BART passengers.  We agree, and affirm the judgment.

---

[1]For simplicity, we will refer to plaintiffs jointly as Ti.

1

## BACKGROUND

Ti alleged that the doors of a BART car closed on her as she attempted to board on the morning of April 1, 2010, and that she suffered unidentified injuries as she twisted to escape its clutches. According to the complaint, her husband suffered loss of consortium.

BART moved for summary judgment on the grounds that no triable issues of fact existed as to Ti's claims of liability based on general negligence and maintaining a dangerous condition on public property. In support, BART engineer David Strohl attested that the closing pressure for BART train car doors of 15 to a maximum of 30 pounds is consistent with other transit agencies around the country and complies with national standards. According to Strohl, a door-closing pressure lower than 15 pounds would allow dirt buildup on the threshold, leaning riders or other sources of minor friction to prevent the doors from closing, thereby causing innumerable system-wide delays.[2] When doors encounter a more significant obstruction, the closing pressure is not increased. Rather, if a door cannot fully close, the pressure ceases after three seconds, allowing the door to be opened by hand. Pressure on the doors is then re-applied after one-half second to three seconds, depending on the model of the car. Strohl also attested that he reviewed BART's maintenance and repair records for all cars potentially involved in Ti's incident and that, based on his review, all were regularly maintained and operating pursuant to specifications on that day. BART's other evidence showed that the rate of passengers reporting an incident involving the closing of a train door from April 1, 2008 through April 1, 2010 was one in 2,339,400. Since each passenger passes through a car door to enter and exit the train, BART's actual train door incident rate is one in 4,678,800.

Ti admitted all of the above, but argued BART could be held liable for its train operator's allegedly negligent failure to control the car doors. Her supporting declaration

---

[2]As even occasional BART riders have unhappily learned, trains cannot move until all doors are completely closed. (See Evid. Code, § 452, subds. (g), (h).)

2

provided this description of the incident. The train was stopped at the platform with the doors closed when Ti arrived. She was about the tenth person waiting in line. Then, "after the train doors opened and the passengers in line in front of me began to move forward, I looked left and right, but did not see a train operator observing the passengers getting off and on the train." When the doors closed, Ti was "trapped between the two closing doors, one foot in the train, the other on the platform. In struggling and screaming to get loose I was injured before the doors opened, releasing me from their grasp."

Ti also said that, in her experience as a BART commuter, she had seen train operators lean their heads out of the side window to observe passengers entering and exiting the train while it was stopped at the station, and occasionally "observed the doors remain open for a late arriving passenger approaching the doors, who otherwise would have missed the train. It appeared to me on those occasions, that the train operator had the ability to keep the doors open longer than usual, to respond to the needs of a passenger, and, I assume for other reason[s] as well." As she struggled to extricate herself from the doors, however, Ti "frantically looked" for but did not see the train operator. Ti's "experience using [BART] trains led [her] to believe that [she] could have been released from the doors without injury if the operator had been observing the activity at the doors, as he or she normally did when passengers got off and on the train."

BART's reply noted that Ti's statement that she looked for but did not see the train operator contradicted her deposition testimony that she was unable to see the front of the train when she was caught in the doors. In any event, it argued, Ti failed to advance a valid legal theory that precluded summary judgment because her complaint alleged only premises liability, not vicarious liability for the train operator's negligence.

The court granted summary judgment. It ruled that Ti failed to present sufficient evidence from which a reasonable jury could find BART liable for negligence and, specifically, for negligence by the train operator. The court ruled against Ti on her claim

3

that the doors constituted a dangerous condition of public property because she failed to present sufficient evidence from which a jury could find the condition of the train car doors presented a substantial risk of injury to passengers. "[Ti's] allegation that the doors did not function properly on the date in question is not sufficient to create a triable issue of material fact. [Ti] has not offered any evidence concerning . . . other similar injuries sustained by BART passengers." The court granted summary judgment in favor of BART on both of Ti's claims and Diao's derivative claim for loss of consortium.

Ti filed this timely appeal from the judgment.

## DISCUSSION

### I. Legal Standards On Summary Judgment

" 'To secure summary judgment, a moving defendant may prove an affirmative defense, disprove at least one essential element of the plaintiff's cause of action [citations] or show that an element of the cause of action cannot be established [citations]. [Citation.] The defendant "must show that under no possible hypothesis within the reasonable purview of the allegations of the complaint is there a material question of fact which requires examination by trial." [Citation.] [¶] . . . The moving defendant bears the burden of proving the absence of any triable issue of material fact, even though the burden of proof as to a particular issue may be on the plaintiff at trial. [Citation.] . . . Once the moving party has met its burden, the opposing party bears the burden of presenting evidence that there is any triable issue of fact as to any essential element of a cause of action.' " (*Ochoa v. Pacific Gas & Electric Co.* (1998) 61 Cal.App.4th 1480, 1485, brackets and ellipses in original.)

"In reviewing the propriety of a summary judgment, the appellate court must resolve all doubts in favor of the party opposing the judgment. [Citation.] The reviewing court conducts a de novo examination to see whether there are any genuine issues of material fact or whether the moving party is entitled to summary judgment as a matter of law." (*M.B. v. City of San Diego* (1991) 233 Cal.App.3d 699, 703–704.) "We accept as

4

true the facts alleged in the evidence of the party opposing summary judgment and the reasonable inferences that can be drawn from them. [Citation.] However, to defeat the motion for summary judgment, the plaintiff must show ' "specific facts," ' and cannot rely upon the allegations of the pleadings." (*Horn v. Cushman & Wakefield Western, Inc.* (1999) 72 Cal.App.4th 798, 805.) "While '[s]ummary judgment is a drastic procedure, should be used with caution [citation] and should be granted only if there is no issue of triable fact' [citation], it is also true '[j]ustice requires that a defendant be as much entitled to be rid of an unmeritorious lawsuit as a plaintiff is entitled to maintain a good one.' " (*M.B. v. City of San Diego, supra,* at pp. 703–704.)

## II. Analysis

At the outset, we note that Ti has abandoned any claim that BART is liable for a dangerous condition on public property because she failed to address such a theory in her appellate briefing. Even so, the court properly rejected it. " 'Dangerous condition' is statutorily defined as a 'condition of property that creates a substantial (as distinguished from a minor, trivial or insignificant) risk of injury when such property or adjacent property is used with due care in a manner in which it is reasonably foreseeable that it will be used.' (Gov. Code, § 830, subd. (a).) Thus, to sufficiently prove a 'dangerous condition' within the meaning of section 830, a plaintiff must establish that the condition of the public property created a substantial risk of injury when 'used with due care' in a foreseeable manner." (*Fredette v. City of Long Beach* (1986) 187 Cal.App.3d 122, 130, italics and fn. omitted; see also *Callahan v. City and County of San Francisco* (1971) 15 Cal.App.3d 374, 378–380 [paucity of similar accidents supported conclusion public roadway did not present dangerous condition].) Here, BART's evidence established that the train doors were designed and maintained in compliance with nationally accepted safety standards and were not associated with a significant number of similar incidents. Ti failed to counter that showing with any evidence that the train doors created a

substantial risk of injury. Accordingly, BART was entitled to summary judgment on the claim that the car doors presented a dangerous condition of public property.

The court also correctly rejected Ti's cause of action for general negligence premised on the alleged negligence of the train operator. " '[T]he general rule is that an employee of a public entity is liable for his torts to the same extent as a private person [citation] and the public entity is vicariously liable for any injury which its employee causes [citation] to the same extent as a private employer [citation].' " (*Hoff v. Vacaville Unified School Dist.* (1998) 19 Cal.4th 925, 932; Gov. Code, § 815, subd. (a).) Here, Ti cannot show liability on the part of a BART employee. All she offered was her speculation that "the train operator had the ability to keep the doors open longer than usual, to respond to the needs of a passenger, and, I assume for other reason[s] as well." She presented no evidence that the train operator could or should have seen her so as to manually prevent the doors from closing as she entered the car. Nor did she present evidence that train operators are or should be responsible for visually confirming that passengers are clear of train doors before they shut, or, in light of the evidence that train doors automatically release pressure if obstructed, that due care requires operators to do so. "The opposition to summary judgment will be deemed insufficient when it is essentially conclusionary, argumentative or based on conjecture and speculation." (*Buehler v. Alpha Beta Co.* (1990) 224 Cal.App.3d 729, 733.) This is such a case. Ti's evidence was insufficient to controvert BART's showing that she could not prove either of her causes of action, so the trial court properly granted summary judgment.[3]

---

[3]Because the viability of Diao's claim is dependent on Ti's, we do not discuss it separately.

## DISPOSITION

The judgment is affirmed.

_____
Siggins, J.

We concur:

_____
McGuiness, P.J.

_____
Pollak, J.